# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

EDWARD MICHAEL CZUPRYNSKI,

Defendant-Appellant.

FOR PUBLICATION
August 2, 2018
9:05 a.m.

No. 336883
Bay Circuit Court
LC No. 16-010157-FH

Before: METER, P.J., and GADOLA and TUKEL, JJ.

TUKEL, J.

Defendant appeals as of right his conviction by a jury of committing a motor-vehicle moving violation and thereby causing a serious impairment of a body function, MCL 257.601d(2). The trial court sentenced him to 18 months' probation. We reverse defendant's conviction and remand for a new trial.

## I. FACTS

Defendant was driving on Center Avenue in Hampton Township on June 15, 2015, approaching Scheurman Road, when he struck James Stivenson with his vehicle. Stivenson broke his legs in eight places, suffered a head injury, and now has difficulty walking. A police officer testified that immediately after the accident, defendant seemed "sleepy, drowsy, [or] slow." The officer testified that defendant did not know what he had hit and "thought somebody had thrown a bag of garbage at him." Defendant stated at trial that he had taken a pill to help him "relax" and that it was a "sleeping aid" but "not a sleeping pill." It also is not disputed that defendant had consumed some beer prior to driving that night. However, Stivenson was dressed in dark clothing, and witnesses stated that Stivenson tried to rush across the street in front of defendant's car. Stivenson also had a 0.19 blood-alcohol level.

An analysis of the crash-data-retrieval system from defendant's car revealed that defendant had been traveling at a speed of 41 miles per hour, without hitting the brakes, before the crash. The speed limit before the intersection was 35 miles per hour. In addition, Center Avenue had a blinking yellow light at the time of the crash. A police officer explained that when a driver is faced with a flashing yellow light, he or she is "supposed to proceed with caution . . . and continue through if it's . . . clear."

-1-

Two charges were submitted to the jury: "operating a motor vehicle while visibly impaired causing serious impairment of a body function to another person" (Count I) and "committing a moving violation causing serious impairment of a body function" (Count II). The jury acquitted defendant on Count I but convicted him on Count II, and this appeal followed.

## II.  PROPRIETY OF MICHIGAN CRIMINAL JURY INSTRUCTION 15.19

Defendant argues that M Crim JI 15.19, defining "moving violation causing serious impairment of a body function" was erroneous.  Defendant also argues that the trial court compounded the error in M Crim JI 15.19 in answer to a jury question during deliberations, when it again emphasized the erroneous portion of the instruction.  We agree.

We review the proper interpretation of a statute de novo.  *People v Barrera*, 278 Mich App 730, 735; 752 NW2d 485 (2008).  "[J]ury instructions that involve questions of law are also reviewed de novo."  *People v Gilis*, 474 Mich 105, 113; 712 NW2d 419 (2006) (quotation marks and citation omitted).  When interpreting a statute, it is the court's duty to give effect to the intent of the Legislature as expressed in the actual language used in the statute.  *People v Calloway*, 500 Mich 180, 184; 895 NW2d 165 (2017).  "It is the role of the judiciary to interpret, not write, the law."  *People v Schaefer*, 473 Mich 418, 430; 703 NW2d 774 (2005).  If the statutory language is clear and unambiguous, the statute is to be enforced as written.  *People v Laney*, 470 Mich 267, 271; 680 NW2d 888 (2004).  In those circumstances, judicial construction is neither necessary nor permitted because it is presumed that the Legislature intended the clear meaning it expressed.  *People v Stone*, 463 Mich 558, 562; 621 NW2d 702 (2001).

"The right to a trial by a jury is one of the lodestar concepts of Anglo-American jurisprudence and has historical roots that grow as deep as the Magna Carta of 1215."  *People v Antkoviak*, 242 Mich App 424, 441; 619 NW2d 18 (2000).  "A criminal defendant is entitled to have a properly instructed jury consider the evidence against him."  *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002).  Jury instructions must include all elements of the charged offenses and any material issues, defenses, and theories if there is evidence to support them.  *People v Jackson (On Reconsideration)*, 313 Mich App 409, 421; 884 NW2d 297 (2002), citing *People v Reed*, 393 Mich 342, 349-350; 224 NW2d 867 (1975).  Absent proper instruction, a defendant might be convicted of an "offense" which our Legislature has not in fact criminalized.  And perhaps most importantly for this case, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."  *Henderson v Kibbe*, 431 US 145, 155; 97 S Ct 1730; 52 L Ed 2d 203 (1977).

At issue is whether the provided jury instruction adequately informed the jury of what the statute requires for a defendant to have caused the serious impairment of a body function under MCL 257.601d(2).

### A.  MCL 257.601d(2)

The statute under which defendant was convicted, MCL 257.601d(2), provides:
> A person who commits a moving violation while operating a vehicle upon a highway or other place open to the general public, including, but not limited to, an area designated for the parking of motor vehicles, that causes serious

-2-

impairment of a body function to another person is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $500.00, or both.

The trial court instructed the jury that to prove the charge, the prosecution had to establish beyond a reasonable doubt the following:

First, that the defendant committed one or more of the following moving violations: Failing to proceed through a flashing yellow signal with caution or failing to observe an authorized speed or traffic control sign, signal, or device; second, that the defendant's operation of the vehicle caused a serious impairment of a body function to James Scott Stivenson. Again, to cause such injury, the defendant's *operation* of a vehicle must have been a factual cause of the injury. That is, but for the defendant's *operation* of the vehicle, the injury would not have occurred. In addition, *operation* of the vehicle must have been a proximate cause of the injury, that is, the injury must have been a direct and natural result of *operating* the vehicle. [Emphasis added.]

The trial court's instruction was a verbatim recitation of the model instruction, modified to include the specific moving violations charged in this case, as well as the name of the accident victim. See M Crim JI 15.19.

The first part of the phrase in MCL 257.601d(2) has two predicates to the causation requirement because "operating a vehicle" is tied to "moving violation" through the word "while." Thus, neither a moving violation alone, nor the operation of a vehicle alone satisfies the statute; rather, both of those predicates must be present in conjunction with each other—a moving violation *while* operating a vehicle.

The statute then has a causation requirement. The causation requirement is potentially ambiguous. What is it that must "cause" the injury: the conjoined "moving violation" while "operating a vehicle," or is merely "operating a vehicle . . . that causes serious impairment of a body function" sufficient? This issue is critical because M Crim JI 15.19 addresses causation as it relates to the operation of a vehicle but does not do so as to the moving violation.

The general rule is that, based on common grammatical usage, "a modifying clause will be construed to modify only the last antecedent unless some language in the statute requires a different interpretation." *People v Small*, 467 Mich 259, 263; 650 NW2d 328 (2002). If read that way, "causes serious impairment of a body function" would modify only "operating a motor vehicle" and would not modify "commits a moving violation." If that is the correct reading, then the moving violation requirement would not play a part in the causation analysis; that is, the statute would not require that the moving violation give rise to or cause the accident.

In *Schaefer*, 473 Mich 418, our Supreme Court interpreted a different statute as not requiring that the first predicate of that statute, being under the influence of alcohol, be a cause of an accident resulting in an injury. The statute at issue in *Schaeffer*, MCL 257.625, addresses Michigan's so-called "OUIL causing death statute," found in subsection (4). *Id.* at 427-428. That statute provides that "[a] person, whether licensed or not, who operates a motor vehicle in

violation of [various subsections relating to alcohol or controlled substances], *and by the operation of that motor vehicle causes the death of another person is guilty of a crime.*" (Emphasis added.) Based on that language, the *Schaefer* Court held that the statute has "no causal link between the defendant's intoxication and the victim's death." *Id.* at 431. "Accordingly, it is the defendant's *operation* of the motor vehicle that must cause the victim's death, not the defendant's 'intoxication.' " *Id*. (emphasis in original).

The operative language of the statute at issue in *Schaefer* is quite different than the language of the statute at issue here. The present statute links the moving violation to the operation of the vehicle and thus requires that those linked elements cause the injury; the statute at issue in *Schaefer*, by contrast, unlinked a defendant's alcohol or drug use from the operation of the vehicle. As the Supreme Court noted in *Schaefer*, "Section 625(4) plainly requires that the victim's death be caused by the defendant's *operation* of the vehicle, not the defendant's *intoxicated* operation. Thus, the manner in which the defendant's intoxication affected his or her operation of the vehicle is unrelated to the causation element of the crime." *Id*. at 433. Here, by contrast, a moving violation "while operating" a vehicle must "cause" the "serious impairment of a body function."

Moreover, if the first requirement, the moving violation, does not play a part in the causation analysis, then its occurrence in any particular case could be merely coincidental to the serious impairment of a body function, and yet a defendant would still be guilty of the offense. In other words, it would be the operation of the vehicle that would constitute the critical component of causation, but a defendant nevertheless would not be guilty of an offense unless, at a minimum, it just so happened that he or she also committed a moving violation. Of course, in some cases, such a moving violation could be completely unrelated to the resulting accident and injury. That lack of a causation requirement made sense as part of the overall statutory scheme in *Schaefer* because the Legislature sought to criminalize a status crime, driving while intoxicated. See *id*. at 433 n 46. Operating a motor vehicle, when the driver has the status of being intoxicated, is tailored to the conduct the Legislature wished to deter even absent a causation requirement.

Here, however, violation of the statute is not tied to a status offense. Rather, the statute requires that a defendant have committed a particular predicate act, a moving violation. Thus, on the basis of its language, the statute supports an interpretation that the moving violation and operation of the motor vehicle *together* must cause the serious bodily injury, rather than reading it such that the statute requires only that the operation of the vehicle cause the injury.

The statute's punctuation also supports the idea that the moving violation must be part of the cause of the accident. As the Supreme Court noted in *Small*, 467 Mich at 263, the last antecedent rule of construction generally controls "unless some language in the statute requires a different interpretation." See also *People v Pinkney*, ___Mich ___, ___; ___ NW2d ___ (2018) (Docket No. 154374); slip op, p 22 (holding that canons of construction can be overcome if the language of a statute is clear enough). One situation where the last antecedent rule of construction is overcome by the drafting of a statute is where the "modifying word or phrase" is "set off by commas." *Small*, 467 Mich at 263 n 4.

Here, the Legislature set the moving violation and operation requirements apart from the causation clause of the statute through a comma immediately preceding the phrase "that causes serious impairment of a body function . . . ." Thus, under the last antecedent rule, this causation phrase does not solely apply to the last antecedent. See *id*. As a result, the language and structure of the statute support reading it in this manner:

> A person who, while operating a vehicle upon a highway or other place open to the general public, including, but not limited to, an area designated for the parking of motor vehicles, commits a moving violation which in combination with the operation of the vehicle causes serious impairment of a body function to another person, is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $500.00, or both.

On the basis of the analysis set forth, we hold that the statute requires that a moving violation together with the operation of a motor vehicle cause the serious impairment of a body function. Thus, the statute plainly requires a causal link between the moving violation and the injury, not simply a causal link between the operation of the vehicle and the injury.

## B. CAUSATION

> [I]n the criminal law context, the term "cause" has acquired a unique, technical meaning. Specifically, the term and concept have two parts: factual causation and proximate causation. Factual causation exists if a finder of fact determines that "but for" defendant's conduct the result would not have occurred. A finding of factual causation alone, however, is not sufficient to hold an individual criminally responsible. The prosecution must also establish that the defendant's conduct was a proximate cause of, in this case, the accident or the victim's death.
>
> Proximate causation is a legal construct designed to prevent criminal liability from attaching when the result of the defendant's conduct is viewed as too remote or unnatural. [*People v Feezel*, 486 Mich 184, 194-195; 783 NW2d 67 (2010) (quotation marks and citation omitted).]

M Crim JI 15.19 correctly defines factual and proximate causation, but it misapplies proximate causation to the statute at issue. The statute requires that the moving violation together with operation of the vehicle be the proximate cause of the bodily injury. However, the model instruction tells the jury that operation of the vehicle *alone* must be the proximate cause:

> Again, to cause such injury, the defendant's operation of a vehicle must have been a factual cause of the injury. That is, but for the defendant's operation of the vehicle, the injury would not have occurred. In addition, *operation of the vehicle* must have been a proximate cause of the injury, that is, the injury must have been a direct and natural result of *operating the vehicle*. [Emphasis added.]

That instruction clearly is incorrect. Operation of a vehicle simply means driving. But it is not mere driving, or even driving while committing a moving violation which triggers criminal

liability under the statute. Rather, criminal liability arises if and only if a moving violation, while driving, *causes* serious impairment of a body function.

Put simply, the instruction here relieved the prosecution of proving that the moving violation caused the accident and instead required only that "the operation of the motor vehicle" caused the accident. The instruction thus created a de facto strict liability offense in which any person who is involved in a serious injury accident and who has committed a moving violation is automatically guilty of the criminal offense charged here because, by definition in each case that crime is charged, there will have been an accident in which a defendant operated a motor vehicle.

## C. HARMLESS ERROR

Because the instruction was erroneous, we must consider whether it was harmless error. See *Schaefer*, 473 Mich at 441-442, citing MCL 769.26. As a preserved, nonconstitutional error, "[t]he defendant's conviction will not be reversed unless, after examining the nature of the error in light of the weight and strength of the untainted evidence, it affirmatively appears that it is more probable than not that the error was outcome determinative." *Riddle*, 467 Mich at 124-125 (citations omitted). Applying that standard here, the error deprived defendant of a fair trial.

The jury was confused by the model instruction that was given. In the course of deliberations, the jury asked the trial court, "Would a moving violation be a criminal offense in all cases? What makes this criminal?" The trial court responded,

> When a moving violation causes a serious impairment of a body function, seems to answer your question. I would redirect you back to Criminal Jury Instruction 15.19, which is the full instruction on Count 2, which includes in particular, after defining the two moving violations, what—what constitutes that element of the charge. So, in response to your questions seems to me, a moving violation that is committed that causes a serious impairment of a body function.

The trial court thus instructed the jury that one of the elements of that offense is "a moving violation [which] causes a serious impairment of a body function," or "a moving violation that is committed that causes a serious impairment of a body function."

If the trial court had limited its supplemental instruction to the first and last sentences that it gave, the instruction arguably would have cured the prior error by clarifying that the prosecution was not relieved of proving that the moving violation played at least a part in causing the injury. However, the trial court also referred the jury back to M Crim JI 15.19, which the court identified as "the full instruction on Count 2, which includes . . . what constitutes the elements of the charge." In light of the trial court's supplemental instruction, what we are left with is a mostly correct answer to a jury question but which also tells the jury to refer back to an incorrect answer, and it further tells the jury that the incorrect portion of the answer defines the elements of the offense.

The jury was duty-bound to accept the instructions given by the trial court. See M Crim JI 2.1 (oath of jurors). However, a "clarification," which incorporates both a correct and an incorrect statement of the law is no clarification at all. Just as we are duty-bound not to focus on

one particular instruction out of context, *People v Aldrich*, 246 Mich App 101, 124; 631 NW2d 67 (2001), so too the jury was required to "consider all of [the trial court's] instructions as a connected series. Taken all together, they are the law you must follow," M Crim JI 2.24; see also *Griffin v United States*, 502 US 46, 59; 112 S Ct 466; 116 L Ed 2d 371 (1991) ("Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law . . . . When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error. Quite the opposite is true, however, when they have been left the option of relying upon a factually inadequate theory, since jurors are well equipped to analyze the evidence."). Being obliged to follow the law as given to it by the trial court, the jury here necessarily applied an erroneous view of the law.

The question then is what effect the error had, "after examining the nature of the error in light of the weight and strength of the untainted evidence." *Riddle*, 467 Mich at 124-125. As noted, in conducting that analysis, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Kibbe*, 431 US at 155. Here, the error almost certainly was outcome determinative. During deliberations, the jury asked under what circumstances a moving violation could violate the statute at issue, thus showing that the jury was at a minimum struggling with whether the moving violation here qualified. As noted, the model instruction and the supplemental instruction then relieved the prosecution of the obligation of showing that the moving violation, rather than the mere operation of the car, caused the serious injury. In the words of the *Kibbe* Court, this was "a misstatement of the law," which likely was more prejudicial than an omission or incomplete instruction might have been.

Even more significantly, the evidence that the moving violation was a factor in causing the injury was controverted in many areas, which created clear factual questions for the jury. It was undisputed that defendant had consumed some beer; he was speeding through the intersection; and he had taken a sleeping pill which, although not a controlled substance under Michigan law, causes drowsiness. On the other hand, there was evidence from which a properly instructed factfinder could have found that the moving violations were not the cause of the accident.[1] The accident took place on June 15, 2015. Video evidence showed that the accident occurred at 10:24 p.m., so even in mid-June it would have been about an hour and a half after sunset. The accident victim, who had a blood-alcohol level of 0.19, was dressed in black. One witness reported that the accident victim ran or rushed into the street ahead of defendant's car before being struck. Another witness, a passenger in a car driven by her husband which was in the lane next to defendant's car, testified that she never saw the accident victim and that if defendant had not struck him, she believed that the car in which she was riding would have hit him instead.

What we are left with, then, is strongly controverted evidence as to the cause of the accident. The jury was not properly instructed as to the law regarding causation. Therefore,

---

[1] Or, at a minimum, that there was reasonable doubt that a moving violation caused the accident and injuries.

-7-

under the circumstances presented here, defendant did not receive a fair trial on that issue, and we reverse defendant's conviction and remand for a new trial before a properly instructed jury.

## III. ADDITIONAL CLAIMS OF ERROR

We address defendant's other claims of error because they could be important in a new trial.

## A. OTHER CHALLENGES TO THE JURY INSTRUCTIONS

Defendant argues that the jury instructions regarding MCL 257.601d(2) failed to require unanimity regarding the moving violation. In other words, the instructions failed to require that all jurors agree regarding which moving violation—failing to proceed through a flashing yellow signal with caution; or failing to observe an authorized speed or traffic-control sign, signal, or device; or both—defendant committed. Defendant contends that this was erroneous and unconstitutional. We disagree.

Defendant did not preserve this issue by challenging this aspect of the jury instructions below. This Court reviews unpreserved issues for plain error affecting substantial rights. *People v Danto*, 294 Mich App 596, 605; 822 NW2d 600 (2011).

In *People v Nicolaides*, 148 Mich App 100, 101; 383 NW2d 620 (1985), the prosecutor charged the defendant, under the version of MCL 257.625 then in effect, with two counts: (1) operating a motor vehicle under the influence of intoxicating liquor and (2) operating a motor vehicle while having a blood-alcohol content of 0.10% or higher. The defendant argued that the prosecutor needed to elect between the two counts. *Nicolaides*, 148 Mich App at 101. This Court ruled that the filing of a two-count complaint was "improper, since only one statute is involved." *Id*. at 103. The Court stated, "What the prosecutor may do, however, in the context of a single-count complaint, is to list alternative theories." *Id*. The Court concluded, "At trial, the trier of fact, judge or jury, may then return a *general verdict regarding the charged violation of § 625 of the Michigan Vehicle Code.*" *Id*. at 104 (emphasis added).

In making its conclusion, the *Nicolaides* Court relied on *People v Fullwood*, 51 Mich App 476, 481; 215 NW2d 594 (1974). *Nicolaides*, 148 Mich App at 104. In *Fullwood*, 51 Mich App at 481, this Court stated:

> The information, charging alternative counts of premeditated and felony murder, went to the jury. The jury returned a verdict of murder in the first degree. Defendant claims he was entitled to know upon which theory the jury convicted to insure his right to a unanimous verdict and avoid double jeopardy problems. We do not agree.

The Court additionally stated:

> [The] defendant [was not] deprived of his right to a unanimous jury verdict. A general verdict of guilty is erroneous when the offenses charged are separate and distinct in character, provable by substantially different evidence, and punishable by different penalties. The penalty for felony and premeditated murder, both

-8-

species of first-degree murder, is the same. Substantially similar evidence proves both crimes, except that a showing of murder in the perpetration of an enumerated felony supplies the premeditation element which the prosecution must otherwise prove. Further, the charged counts are not mutually exclusive; they can and do arise in the same transaction. [*Id*. at 481-482 (citations omitted).]

In *People v Goold*, 241 Mich App 333, 342-343; 615 NW2d 794 (2000), the Court noted that when criminal sexual conduct is charged under one statute but there are different possible aggravating elements, "the prosecutor must charge a defendant under a single count using alternative theories, but the prosecutor does not have to elect one theory over the other."

Defendant was charged with the violation of a single statute: MCL 257.601d(2). Therefore, in light of *Nicolaides*, *Fullwood*, and *Goold*, a general verdict as to a moving violation, without requiring jury unanimity, was sufficient in this case.

Defendant next argues that the jury should have been instructed that a conviction in this case should have required a mens rea reflecting criminal culpability, such as negligence or recklessness, and that to allow otherwise offends principles of fairness and due process. Defendant did not challenge this aspect of the jury instructions below, and our review of this unpreserved issue is for plain error affecting substantial rights. *Danto*, 294 Mich App at 605.

In *People v Pace*, 311 Mich App 1, 4-12; 874 NW2d 164 (2015), this Court analyzed the mens rea applicable to a violation of MCL 257.601d(2). The Court unambiguously concluded that negligence need not be proven for a conviction under the statute. *Pace*, 311 Mich App at 12. The Court noted that "the Legislature intended to dispense with the criminal intent element of committing a moving violation causing serious impairment of a body function, and . . . intended to make such a violation a strict liability offense." *Id*. at 9. The Court found the statute constitutional, even when interpreted in such a manner. *Id*. at 11-12. Accordingly, because *Pace* is directly on point, we must reject defendant's argument. See MCR 7.215(J)(1) (discussing the precedential effect of Court of Appeals opinions).

## B. VALIDITY OF SEARCH WARRANT

Defendant argues that Hampton Township Police Officer Bryan Benchley made material misstatements and omissions in the affidavit in support of the search warrant for defendant's blood draw. Defendant contends that when the affidavit is corrected, it provides no probable cause for the blood draw.[2] We disagree.

---

[2] Although the prosecutor argues that this issue is moot in light of the acquittal on Count I, we review it because of the chance that the jurors used the blood-test results in weighing their decision about a moving violation. The intoxication charge submitted to the jury had "visible impairment" as a required element. It is possible that the jurors found no *visible* impairment but nonetheless found the blood-test results to have some probative value regarding whether

We grant deference to a magistrate's determination of probable cause to issue a search warrant. *People v Russo*, 439 Mich 584, 604; 487 NW2d 698 (1992). The *Russo* Court stated:

> In sum, a search warrant and the underlying affidavit are to be read in a common-sense and realistic manner. Affording deference to the magistrate's decision simply requires that reviewing courts ensure that there is a substantial basis for the magistrate's conclusion that there is a fair probability that contraband or evidence of a crime will be found in a particular place. [*Id.* (quotation marks and citation omitted).]

Defendant's blood draw revealed the presence of a benzodiazepine, specifically, "321 nanograms per milliliter of [t]emazepam [Restoril]." Benchley testified at trial that, at the scene, he smelled alcohol on defendant and noticed that his eyes were "bloodshot and glossy." Because defendant refused a voluntary blood draw, Benchley obtained a search warrant for a blood sample. Benchley admitted that his affidavit in support of the warrant erroneously attributed to him observations that in fact were made by other officers.

Defendant claims that Benchley made misrepresentations in his affidavit such that the blood-draw results should have been suppressed. In particular, defendant argues that the affidavit contained false information and omitted other, exculpatory, relevant information.[3] We reject defendant's arguments. Assuming that the affidavit did contain some incorrect information, defendant ignores the fact that the "correct" information contained in the affidavit was sufficient to support a finding of probable cause. Further, the facts that defendant has identified as being "exculpatory," which he claims should have been included in the affidavit, would not have negated a finding of probable cause. Benchley noted in the affidavit that defendant was observed (1) "swaying,"[4] (2) emitting a "slight odor of alcohol," and (3) having

---

defendant committed a moving violation, i.e., whether the drug in defendant's system impacted his ability to proceed through the blinking yellow light with caution.

[3] In discussing the search warrant, defendant heavily relied in his arguments below and heavily relies in his briefs on appeal on the preliminary-examination transcripts. However, he has not submitted these transcripts to this Court. An appellant bears the burden of "furnishing the reviewing court with a record to verify the factual basis of any argument upon which reversal [is] predicated." *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000). At any rate, it is possible for us to review this issue even in light of the absence of transcripts.

[4] Defendant contends that the statement about "swaying" was a lie, but the court specifically noted that Sergeant Jeff Short had testified about defendant's swaying, and defendant does not deny as much on appeal, stating only that Short did not observe defendant "falling asleep" or "falling over." In effect, defendant does not challenge the finding that Short testified about swaying. While it is presumably true that Benchley did not *personally observe* the swaying and, to be completely accurate, should have mentioned that the observation of swaying was made by a fellow officer, it is notable that Benchley was using a preprinted form that allowed for check-mark answers for categories such as "[o]dor of alcohol" and "balance," and the checklist was preceded by the words: "Affiant has probable cause to believe the above individual was under

-10-

"bloodshot and glassy eyes." The affidavit also noted that defendant admitted to taking an "unknown sleeping pill prior to driving" and admitted that he drove a car that struck a pedestrian. These remaining facts still provided a substantial basis for the magistrate's conclusion regarding a fair probability that evidence of a crime would be found by way of the blood draw. See *Russo*, 439 Mich at 604. Importantly, only when material misstatements or omissions *necessary to the finding of probable cause* have been made should a search warrant be invalidated. *People v Mullen*, 282 Mich App 14, 23-24; 762 NW2d 170 (2008).

Moreover, even if we were to determine on appeal that the search warrant did not establish probable cause, the officer's reliance on the issuing judge's finding of probable cause nevertheless was objectively reasonable and thus the fruits of the search nevertheless would not be suppressed. See *People v Goldston*, 470 Mich 523; 682 NW2d 479 (2004).

Reliance on a warrant is reasonable even if the warrant is later invalidated for lack of probable cause, except under three circumstances: (1) if the issuing magistrate or judge is misled by information in the affidavit that the affiant either knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing judge or magistrate wholly abandons his judicial role; or (3) where an officer relies on a warrant based on a "bare bones" affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. *United States v Leon*, 468 US 897, 915, 923; 104 S Ct 3405; 82 L Ed 2d 677 (1984); *Goldston*, 470 Mich at 531. We already have rejected the claim that the affiant misled the issuing judge, so that exception cannot be applicable here. There is no argument, nor is any possible, that the issuing judge, 74th District Judge Timothy Kelly, in any way abandoned his judicial role (in fact, defendant's briefs in this court and in the trial court never even identified Judge Kelly as the issuing judge, let alone sought to impugn his judicial role); and the affidavit provided more than enough information to render official belief in the existence of probable cause reasonable. Thus, even if the affidavit failed to establish probable cause, *Leon* and *Goldston* nevertheless mandate upholding the search conducted pursuant to it.

---

the influence of alcohol or controlled substances based on the following observations and/or tests[.]" Benchley was filling out a preprinted form based on his and other officers' observations, and he checked the word "swaying" for the "balance" category. As noted in *Franks v Delaware*, 438 US 154, 165; 98 S Ct 2674; 57 L Ed 2d 667 (1978), "probable cause may be founded upon hearsay." See also *People v Harris*, 191 Mich App 422, 425; 479 NW2d 6 (1991). We cannot agree with defendant's implication that if the affidavit had spelled out that another officer had made the "swaying" observation, probable cause would have been negated, given that the other officer had directly observed defendant just as Benchley had.

## IV.  CONCLUSION

For the reasons stated, we reverse defendant's conviction and remand for a new trial before a properly instructed injury.  We do not retain jurisdiction.

/s/ Jonathan Tukel
/s/ Michael F. Gadola