*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RALPH DOUGLAS BUTLER,

        Defendant-Appellant.

UNPUBLISHED
December 19, 2019

No. 344787
Saginaw Circuit Court
LC No. 17-043828-FC

Before: TUKEL, P.J., and SAWYER and RIORDAN, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial conviction of second-degree murder, MCL 750.317. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to serve 66 to 100 years in prison. Defendant argues that the trial court erred by denying his motion to suppress evidence. Defendant further argues that the trial court erred by failing to include a jury instruction on the lesser included offense of voluntary manslaughter. We affirm.

## I. FACTS

This case arises from the investigation of a homicide that occurred on approximately December 2, 2016. On December 3, 2016, a body was found lying on the grass. Bloody clothing was found in a dumpster less than a mile from the location of the body. Other items found in the dumpster included dismembered fingertips, three gloves, and a knife. The body had a total of 52 stab wounds. The victim was later identified as Andrew Cannon. DNA testing established that the fingerprints found in the dumpster were Cannon's. DNA testing also established that Cannon's DNA was on the knife blade and that the DNA of Cannon and defendant was present on the gloves. Defendant's DNA was not on the knife.

The police interviewed defendant on December 9, 2016. Defendant informed police that he saw Cannon on December 2, 2016, between 4:30 p.m. and 5:15 p.m. Defendant also informed the police that he believed his girlfriend was having an affair with Cannon. The police then interviewed defendant's girlfriend as a homicide suspect on December 20, 2016. Defendant's girlfriend drove a black 2006 Ford Fusion, which both she and defendant used, to the Saginaw Police Department for the interview; she parked in the main parking area that is

-1-

open to the public. A detective examined the Fusion while other detectives interviewed defendant's girlfriend. The detective did not obtain a search warrant or receive consent before inspecting the vehicle.

When the detective examined the exterior of the vehicle, he noticed dark, maroon-colored spots on the back bumper. According to the detective, and based on his past experience, including his experience with dried blood, the spots appeared to be blood. The detective also testified during trial that one spot appeared to have possible hair fibers mixed in the blood. After informing other detectives at the station of what he observed, another detective used a Hemastix reagent test to test the Fusion for the presence of blood. This detective took the Hemastix strip and physically touched it against a spot on the exterior of the vehicle that appeared to be blood. The test positively indicated the presence of blood on the vehicle.

## II. ANALYSIS

### A. MOTION TO SUPPRESS

Defendant first argues that the trial court erred by denying his motion to suppress the fruits of the warrantless search of the exterior of his car, on the basis that the warrantless testing by the police violated his Fourth Amendment rights. We disagree.

The trial court's ultimate decision on a motion to suppress is reviewed de novo. *People v Hyde*, 285 Mich App 428, 438; 775 NW2d 833 (2009). This Court reviews the trial court's factual findings on a motion to suppress for clear error, *People v Mazzie*, 326 Mich App 279, 288; 926 NW2d 359 (2018), which requires that we leave the trial court's factual findings undisturbed unless we have a definite and firm conviction that an error occurred. *Id*. at 288-289.

The trial court determined, relying on *Schmitt v Stassi*, 250 F Supp 3d 99 (ED La, 2017), that a search implicating the Fourth Amendment occurred because the officers' testing of the exterior of the vehicle constituted a trespass. We disagree with this conclusion because a search does not occur for Fourth Amendment purposes when a defendant lacks a reasonable expectation of privacy in the object of the search. We agree, however, with the trial court's ultimate determination that the plain-view doctrine justified the seizure of the blood evidence, and we conclude that the denial of defendant's motion to suppress was proper.

Both the United States Constitution and the Michigan Constitution guarantee the right of the people to be free from unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11; *People v Kazmierczak*, 461 Mich 411, 417; 605 NW2d 667 (2000). Searches or seizures conducted without a warrant are per se unreasonable, subject to well-delineated exceptions. *People v Champion*, 452 Mich 92, 98; 549 NW2d 849 (1996), cert den 519 US 1081; 117 S Ct 747; 136 L Ed 2d 685 (1997). Consequently, "[i]n order to show that a search [or seizure] was in compliance with the Fourth Amendment, the police must show either that they had a warrant or that their conduct fell within one of the narrow, specific exceptions to the warrant requirement." *Kazmierczak*, 461 Mich at 418.

A search occurs for Fourth Amendment purposes when the police intrude upon a person's reasonable expectation of privacy. *People v Antwine*, 293 Mich App 192, 195; 809 NW2d 439

(2011). Whether a person's expectation of privacy is reasonable hinges on two inquiries: (1) whether an individual had "an actual, subjective privacy expectation," and (2) whether society deems that privacy expectation to be reasonable. *Id*. (quotation marks and citation omitted). A person does not have a reasonable expectation of privacy over an object a person knowingly exposes to the public. *People v Barbee*, 325 Mich App 1, 7; 923 NW2d 601 (2018). For example, a "defendant [does] not have a reasonable or legitimate expectation of privacy in [a] vehicle that [is] parked on a public street." *Id*. at 11. Moreover, "a policeman's mere observation from a vantage point that does not infringe upon a privacy interest, of something open to public view, normally implicates no Fourth Amendment constraints because observation of items readily visible to the public is not a search." *Id*. at 6 (quotation marks and citation omitted).

We similarly conclude that the officers' observations in this case did not constitute a search when they observed or inspected the exterior of a publicly parked vehicle. The officers observed only the maroon-colored spots on the exterior of the vehicle, which were exposed to public view. Accordingly, the officers' observations drawn from the publicly parked vehicle did not constitute a search because defendant lacked a reasonable expectation of privacy.

The officers, however, did more than simply observe the maroon-colored spots on the Fusion. Rather, they proceeded to perform a Hemastix test on the blood stains to determine whether they were in fact blood. This test arguably did constitute a search for Fourth Amendment purposes, but even if it did, the police had probable cause for the search because the evidence was in plain view, an exception to the warrant requirement. Moreover, the evidence also was properly seized under the automobile exception, another exception to the warrant requirement.

The plain-view exception allows officers, who otherwise are lawfully present, to seize any evidence that is obviously incriminatory. See *Horton v California*, 496 US 128, 135; 110 S Ct 2301; 110 L Ed2d 112 (1990); *People v Galloway*, 259 Mich App 634; 639-640, 675 NW2d 883 (2003). "An item is obviously incriminatory, meaning its incriminating nature is immediately apparent, if without further search the officers have probable cause to believe the items are seizable." *People v Mahdi*, 317 Mich App 446, 462; 894 NW2d 732 (2016) (citation and quotation marks omitted). Whether probable cause exists depends on the information known to the officers at the time of the search. *People v Beuschlein*, 245 Mich App 744, 749; 630 NW2d 921 (2001). "The information gleaned as a result of observation of an object in plain or open sight can form the basis of probable cause or reasonable suspicion to proceed further." *Barbee*, 325 Mich App at 8.

The officers viewed the exterior of defendant's vehicle from a non-intrusive vantage point because the vehicle was parked in a public place and defendant had no reasonable expectation of privacy in the exterior of a publicly parked vehicle. The detective testified that upon observing the exterior of the vehicle, he noticed what appeared, based on his training and experience, to be blood and possible hair fibers. This observation, combined with additional information known to the officers, gave rise to probable cause to seize the blood and fiber, which were in plain view. Thus, the police were not required to obtain a warrant to perform the Hemastix test on the maroon-colored spots found on the Fusion and in any event, given the existence of probable cause, they could seize those items under the automobile exception to the

warrant requirement. See *People v Kazmierczak*, 461 Mich 411, 418-419, 605 NW2d 667 (2000).[1]

Defendant further argues that a subsequently issued search warrant was invalid for lack of probable cause, and that the good-faith exception does not apply to a facially deficient warrant. The prosecution argues that this issue is waived because it was not properly presented in defendant's statement of issues. Defendant's statement of issues, however, stated that the Fusion was searched without a warrant. Thus, the issue of whether the police had a valid warrant to search the Fusion was raised in defendant's statement of issues and the issue is not waived. See MCR 7.212(C)(5); *People v Unger*, 278 Mich App 210, 262; 749 NW2d 272 (2008).

A search warrant requires probable cause to be valid. *People v Waclawski*, 286 Mich App 634, 697; 780 NW2d 321 (2009). Thus, an affidavit supporting a search warrant must contain sufficient facts to support a finding of probable cause. *People v Czuprynski*, 325 Mich App 449, 469-470; 926 NW2d 282 (2018). "Probable cause to issue a search warrant exists where there is a substantial basis for inferring a fair probability that contraband or evidence of a crime will be found in a particular place." *Kazmierczak*, 461 Mich at 417-418 (quotation marks and citation omitted). "Probable cause must be based on facts presented to the issuing magistrate by oath or affirmation." *Waclawski*, 286 Mich App at 698. The affidavit supporting a request for a warrant "must contain facts within the knowledge of the affiant rather than mere conclusions or beliefs." *Id*.

In this case, it is clear from the facts stated within the search warrant affidavit that probable cause existed to issue the search warrant for defendant's Ford Fusion and the entirety of his residence. The police based the initial search warrant on the following information: (1) defendant was interviewed by officers on December 3, 2016, and the officers determined defendant was the last person to see Cannon alive, (2) the officers received information that defendant may have killed Cannon out of jealousy for having an affair with defendant's girlfriend, (3) on December 16, 2016, officers interviewed defendant again and learned that defendant had driven his girlfriend to work the night of December 2, 2016, in their shared Ford Fusion, (4) on December 20, 2016, officers interviewed Brodnex, the girlfriend, and observed the blood and possible hair follicles on the vehicle, and (5) the test returned positive for blood. These facts presented in the affidavit sufficiently established probable cause because they offered a substantial basis for inferring a fair probability that a search would yield evidence of a crime. Because the warrant was properly issued, we need not address whether the good faith exception applies.

---

[1] We note that the police's conduct may have constituted a trespass, but because defendant failed to argue that the police committed a trespass when they conducted the Hemastix test we decline to address the issue *sua sponte*. Furthermore, to the extent defendant raised the trespass issue, the issue is abandoned because defendant failed to cite any legal authority establishing that the police committed a trespass or that any such trespass would have violated his constitutional rights. See *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001) ("Defendant's failure to cite any supporting legal authority constitutes an abandonment of this issue.").

## B. JURY INSTRUCTION

Defendant next argues that the trial court abused its discretion by denying his request for a voluntary manslaughter instruction. We disagree.

This Court reviews for an abuse of discretion the trial court's determination whether a jury instruction is or is not applicable to the facts of the case. *People v Everett*, 318 Mich App 511, 528; 899 NW2d 94 (2017). A trial court abuses its discretion when the outcome is not within the range of reasonable and principled outcomes. *Id*. at 516. Furthermore, when a trial court makes an instructional error, reversal is not warranted unless it affirmatively appears more probable than not that the error affected the outcome of the proceeding. *Id*. at 528.

"A defendant has the right to have a properly instructed jury consider the evidence against him or her, and it is the trial court's role to clearly present the case to the jury and to instruct it on the applicable law." *People v Henderson*, 306 Mich App 1, 4; 854 NW2d 234 (2014) (quotation marks and citations omitted). "The instructions must include all elements of the charged offenses and any material issues, defenses, and theories if supported by the evidence." *People v McGhee*, 268 Mich App 600, 606; 709 NW2d 595 (2005). "[A] requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *Id*. at 607 (citation and quotation marks omitted; alteration in original). "Necessarily included lesser offenses are offenses in which the elements of the lesser offense are completely subsumed in the greater offense." *People v Nickens*, 470 Mich 622, 626; 685 NW2d 657 (2004) (quotation marks and citation omitted). Finally, for a trial court to give a necessarily included lesser offense instruction, "[t]here must be more than a modicum of evidence; there must be sufficient evidence that the defendant could be convicted of the lesser offense." *People v Cheeks*, 216 Mich App 470, 479-480; 549 NW2d 584 (1996).

"Manslaughter is a necessarily included lesser offense of murder." *People v Gillis*, 474 Mich 105, 137; 712 NW2d 419 (2006). "[W]hen a defendant is charged with murder, an instruction for voluntary . . . manslaughter must be given if supported by a rational view of the evidence." *People v Mendoza*, 468 Mich 527, 541; 664 NW2d 685 (2003). "Voluntary manslaughter requires a showing that (1) defendant killed in the heat of passion, (2) this passion was caused by an adequate provocation, and (3) there was no lapse of time during which a reasonable person could have controlled his passions." *People v Roper*, 286 Mich App 77, 87; 777 NW2d 483 (2009). "Adequate provocation is that which would cause the reasonable person to lose control." *People v Pennington*, 323 Mich App, 452, 465; 917 NW2d 720 (2018) (quotation marks and citation omitted).

Defendant argues that the jury should have been instructed regarding the lesser included offense of voluntary manslaughter because defendant's knowledge of his girlfriend's affair with Cannon and the 52 stab wounds inflicted upon Cannon's body suggested that the murder was committed in the heat of passion. But no evidence was presented at trial showing that defendant learned about Cannon's possible affair with defendant's girlfriend close in time to Cannon's death. Furthermore, the DNA evidence suggested that defendant murdered Cannon while

-5-

wearing gloves. The DNA report strongly suggested that DNA from both Cannon and defendant was found on the gloves and that defendant's DNA was excluded from the knife handle. A rational view of this evidence does not support a finding that the killing occurred in the heat of passion; rather, the wearing of gloves strongly suggests premeditation and planning. Thus, because the evidence did not reasonably suggest a lapse of time from provocation to killing, defendant was not entitled to a voluntary manslaughter instruction.

Affirmed.

/s/ Jonathan Tukel
/s/ David H. Sawyer
/s/ Michael J. Riordan