*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

PATRICK MICHAEL MEHARG,

      Defendant-Appellant.

UNPUBLISHED
October 27, 2025
10:01 AM

No. 372717
St. Clair Circuit Court
LC No. 24-000681-FH

Before: REDFORD, P.J., and CAMERON and PATEL, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of making a terrorist threat, MCL 750.543m(1)(a), and malicious use of a telecommunications service, MCL 750.540e(1)(a). Defendant was sentenced, as a third-offense habitual offender, MCL 769.11, to 24 months to 40 years' imprisonment for his conviction of making a terrorist threat, and 180 days' imprisonment for his conviction of malicious use of a telecommunications service, to be served concurrently. We affirm defendant's malicious use of a telecommunications service conviction, but vacate his making a terrorist threat conviction and remand for a new trial on that count for the reasons stated in this opinion.

## I. BACKGROUND

This case involves defendant's phone calls to the office of St. Clair County Probate Judge John Tomlinson. Judge Tomlinson previously entered a final divorce judgment involving defendant's fiancée, Amanda Hosler, and her ex-husband. In December 2023, Judge Tomlinson issued an order to show cause against Hosler regarding her alleged failure to comply with parenting time orders in the divorce matter. Hosler failed to appear, and Judge Tomlinson issued a bench warrant for her arrest. On February 23, 2024, Hosler turned herself in. Judge Tomlinson ordered that Hosler be taken into custody on the bench warrant, and scheduled a contempt hearing.

On that same day, Judge Tomlinson's secretary received a voicemail. The male caller stated, "Hi I'm looking for Judge Tomlinson. Just let him know that the bogeyman is coming his way." The caller identification (ID) listed Hosler's name. Fifteen to twenty minutes later, the secretary answered a phone call from the same number. The male caller asked to speak to Judge

Tomlinson. The secretary informed the caller that the judge was unavailable and offered to take a message. The caller stated, "[T]ell Judge Tomlinson the bogeyman is coming his way." The secretary informed Judge Tomlinson and Joseph Schulte—the Probate Court's Director of Operations—about the two messages. Because Hosler was in custody, it was suspected that defendant made the calls.

The next day—a Saturday—Judge Tomlinson's secretary received another voicemail. Once again, the caller ID listed Hosler's name, but the phone number was different than the two prior calls. The male caller stated:

> Just a little message for Judge Tomlinson. Just want to let him know he's a piece of s**t, and that I will see him. F*****g b***h. Tell him that is what he is, a f*****g b***h, and he's gonna get smoked.

The secretary provided a copy of the voicemail transcript to Judge Tomlinson and Schulte. At Judge Tomlinson's direction, Schulte reported the matter to the Port Huron Police Department.

Defendant was arrested and charged with making a terrorist threat. After defendant was bound over, the prosecution added a charge of malicious use of a telecommunications service. At trial, defendant acknowledged making the phone calls, but denied that he was threatening Judge Tomlinson and stated that he did not intend to hurt Judge Tomlinson or anyone else. He claimed he simply wanted information regarding Hosler's arrest and stated that he wanted "to take [Judge Tomlinson] through the legal system and make sure that he's . . . following the law like everyone else has to." The jury convicted defendant of both counts, and the trial court sentenced defendant as stated above. Defendant appealed his convictions.

After he appealed, this Court issued a decision holding that the terrorist threat statute, MCL 750.543m, was facially unconstitutional. See *People v Kvasnicka*, ___ Mich App ___; ___ NW3d ___ (2025) (Docket No. 371542); slip op at 5, vacated and remanded ___ Mich ___; 18 NW3d 308 (2025) (*Kvasnicka I*). Citing *Kvasnicka I*, defendant moved to remand this matter to the trial court for dismissal of his making a terrorist threat conviction. Before we decided defendant's motion, our Supreme Court vacated *Kvasnicka I* and remanded to this Court for further consideration. *People v Kvasnicka*, ___ Mich ___; 18 NW3d 308 (2025) (Docket No. 371542) (*Kvasnicka II*); slip op at 1. We denied defendant's motion to remand without prejudice, noting that he could refile the motion after there was a decision in *Kvasnicka* following remand. *People v Meharg*, unpublished order of the Court of Appeals, entered April 15, 2025 (Docket No. 372717). This Court's recent decision in *People v Kvasnicka (On Remand)*, ___ Mich App ___; ___ NW3d ___ (2025) (Docket No. 371542) (*Kvasnicka III*) controls the issues in this appeal.

## II. ANALYSIS

Defendant argues that this Court should vacate his convictions because there was insufficient evidence that he made a threat of terrorism or that he threatened violence or bodily

harm to Judge Tomlinson. In his supplemental brief,[1] defendant asserts that he was denied due process because the jury was not instructed on the proper *mens rea* on the charge of making a terrorist threat. Alternatively, he argues that trial counsel rendered ineffective assistance in allowing the defective instruction to be given.

We conclude that there was sufficient evidence to support defendant's conviction of malicious use of a telecommunications service. But *Kvasnicka III* requires us to vacate defendant's making a terrorist threat conviction and remand for a new trial on that count because the jury was improperly instructed.

## A. PRESERVATION AND STANDARDS OF REVIEW

"Challenges to the sufficiency of the evidence are reviewed de novo." *People v Xun Wang*, 505 Mich 239, 251; 952 NW2d 334 (2020). "In reviewing the sufficiency of the evidence, this Court must view the evidence—whether direct or circumstantial—in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt." *People v Kenny*, 332 Mich App 394, 402-403; 956 NW2d 562 (2020). "[A] reviewing court is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Oros*, 502 Mich 229, 240; 917 NW2d 559 (2018) (cleaned up). We also review de novo questions of statutory interpretation. *People v Carter*, 503 Mich 221, 226; 931 NW2d 566 (2019).

We generally review de novo claims of instructional error. *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). However, because defendant did not raise this issue in the trial court, it is unpreserved. See MCR 2.512(C); *People v Czuprynski*, 325 Mich App 449, 466, 926 N.W.2d 282 (2018) (holding that a claim regarding jury instructions is preserved "by challenging [that] aspect of the jury instructions in the trial court.").[2] We review unpreserved constitutional errors for plain error affecting substantial rights. *People v Fackelman*, 489 Mich 515, 537; 802 NW2d 552 (2011). To avoid forfeiture under the plain-error rule, a defendant must show that an error occurred, that it was clear or obvious, and that it was prejudicial, i.e., that it affected the outcome of the trial court proceedings. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public

---

[1] We granted defendant leave to file a supplemental brief, and the prosecution an opportunity to file a responsive brief. *People v Meharg*, unpublished order of the Court of Appeals, entered September 9, 2025 (Docket No. 372717).

[2] After the trial court read the instructions, it asked the parties if they had any challenges to the instructions. Defendant's trial counsel stated that he did not. Considering trial counsel's express approval of the jury instructions as given, we find the challenge to the instructions waived. See *People v Kowalski*, 489 Mich 488, 503-504; 803 NW2d 200 (2011) ("When defense counsel clearly expresses satisfaction with a trial court's decision, counsel's action will be deemed to constitute a waiver."). As in *Kowalski*, however, we will assume for the sake of argument that the matter was merely forfeited and review it for plain error. *Id*. at 505-506.

reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (cleaned up).

An ineffective-assistance-of-counsel claim presents a "mixed question of fact and constitutional law." *People v Yeager*, 511 Mich 478, 487; 999 NW2d 490 (2023). Constitutional questions are reviewed de novo, while the trial court's findings of fact are reviewed for clear error. *Id*.

## B. MAKING A TERRORIST THREAT

Defendant was convicted of making a terrorist threat under MCL 750.543m of the Michigan Anti-Terrorism Act, MCL 750.543a *et seq*. MCL 750.543m provides:

(1) A person is guilty of making a terrorist threat or of making a false report of terrorism if the person does either of the following:

(a) Threatens to commit an act of terrorism and communicates the threat to any other person.

(b) Knowingly makes a false report of an act of terrorism and communicates the false report to any other person, knowing the report is false.

(2) It is not a defense to a prosecution under this section that the defendant did not have the intent or capability of committing the act of terrorism.

(3) A person who violates this section is guilty of a felony punishable by imprisonment for not more than 20 years or a fine of not more than $20,000.00, or both.

MCL 750.543b(a) defines an "act of terrorism" as a

willful and deliberate act that is all of the following:

(i) An act that would be a violent felony under the laws of this state, whether or not committed in this state.

(ii) An act that the person knows or has reason to know is dangerous to human life.

(iii) An act that is intended to intimidate or coerce a civilian population or influence or affect the conduct of government or a unit of government through intimidation or coercion.

Both our federal and state constitutions prohibit the government from enacting laws that abridge the freedom of speech. *People v Burkman*, 513 Mich 300, 327, 15 NW3d 216 (2024), citing US Const Am I and Const 1963, art 1, § 5. But "[t]rue threats of violence are outside the bounds of First Amendment protection and [are] punishable as crimes." *Counterman v Colorado*, 600 US 66, 69; 143 S Ct 2106; 216 L Ed 2d 775 (2023). "True threats are serious expressions conveying that a speaker means to commit an act of unlawful violence." *Id*. at 74 (cleaned up).

"The existence of a threat depends not on the mental state of the author, but on what the statement conveys to the person on the other end." *Id*. (cleaned up).

This Court previously held that MCL 750.543m(1) was not an unconstitutional restriction of free speech because it prohibited only true threats, i.e., statements that "encompass the communication of a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals," and because "the statutes require the existence of an intent to 'intimidate or coerce.' " *People v Osantowski*, 274 Mich App 593, 603; 736 NW2d 289 (2007), rev'd in part on other grounds 481 Mich 103; 748 NW2d 799 (2008). This Court also concluded that "the only intent that the prosecution had the burden to prove was defendant's general intent to communicate a true threat. *Id*. at 605 (cleaned up).

Subsequently, the United States Supreme Court determined that the First Amendment demands a subjective *mens rea* requirement in a true-threat case, "lest the true-threats prosecutions chill too much protected, non-threatening protection." *Counterman*, 600 US at 77-78. Reasoning that recklessness was the constitutionally required mental-state standard in a true-threat case, the *Counterman* Court concluded that the prosecution "must show that the defendant consciously disregarded a substantial risk that his communications would be viewed as threatening violence." *Id*. at 69, 79-80.

In *Kvasnicka I*, __ Mich App at __; slip op at 5, this Court relied on *Counterman* to conclude that MCL 750.543m(1)(a) is facially unconstitutional because it does not expressly require the prosecution to prove that a defendant acted recklessly, i.e., that he or she "consciously disregarded a substantial risk that his [or her] communications would be viewed as threatening violence." But, on remand, this Court applied the constitutional-doubt canon of statutory interpretation[3] and determined that MCL 750.543m(1)(1) is not facially unconstitutional because it is "fairly possible" to interpret the statute to include a *mens rea* requirement "that does not fall foul of the decision in *Counterman*." *Kvasnicka III*, ___ Mich App at___; slip op at 7-8. This Court "construe[d] MCL 750.543m(1)(a) as requiring that the prosecution prove (1) that the defendant *recklessly* threatened (2) to commit an act of terrorism and (3) that the threat was communicated to another person." *Id*. at __; slip op at 8. "The term 'recklessly' means that the defendant 'consciously disregarded a substantial risk that his [or her] communications would be viewed as threatening violence.' " *Id*. at __; slip op at 8, quoting *Counterman*, 600 US at 69. Accordingly, this Court affirmed the trial court's order denying Kvasnicka's motion to dismiss the charges against him and remanded to the trial court for further proceedings. However, this Court directed the trial court to adapt the model jury instructions for making a terrorist threat and "instruct

---

[3] Under the constitutional-doubt canon, "[w]hen the validity of an act is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Sole v Mich Econ Dev Corp*, 509 Mich 406, 419; 983 NW2d 733 (2022) (cleaned up). "[C]ourts reasonably presume that the Legislature did not intend to enact a statute that raises serious constitutional doubts." *Id*. at 419-420 (cleaned up). Accordingly, the constitutional-doubt canon requires this Court "to adopt any other construction of the statute that is fairly possible." *Id*. at 421 (cleaned up).

the jury that the prosecution must prove that Kvasnicka recklessly threatened to commit an act of terrorism, i.e., that he consciously disregarded a substantial risk that his [or her] communications would be viewed as threatening violence." *Kvasnicka III*, ___ Mich App at __; slip op at 9 (cleaned up).

In this case, defendant argues that he was denied due process because the jury was instructed to use a reasonable person mental-state standard. The trial court instructed the jury regarding the terrorist threat charge consistent with M Crim JI 38.4, which is the model jury instruction for making a terrorist threat. Indeed, a trial court must use the model jury instructions unless it determines that the instruction does not accurately reflect the state of the law. MCR 2.512(D)(2). *Kvasnicka III* establishes that defendant could not constitutionally be prosecuted for making a terrorist threat absent the prosecution proving that he recklessly threatened to commit an act of terrorism, by "consciously disregarding a substantial risk that his [or her] communications would be viewed as threatening violence." *Kvasnicka III*, ___ Mich App at___; slip op at 8 (cleaned up). Further, the *Kvasnicka III* Court determined that M Crim JI 38.4(3) is contrary to law because it "only requires that the prosecution must prove that an objectively reasonable person would understand that his message was a true threat, not that the defendant must be subjectively aware that his message was a true threat . . . ." *Id*. at___; slip op at 9.[4] "A criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Mills*, 450 Mich 61, 80; 537 NW2d 909 (1995). The jury was not instructed that the prosecution had to prove that defendant recklessly threatened to commit an act of terrorism. This was plain error. Accordingly, we vacate defendant's making a terrorist threat conviction and remand for a new trial on this count. On remand, the trial court shall instruct the jury that the prosecution must prove that defendant "recklessly threatened to commit an act of terrorism, i.e., that he consciously disregarded a substantial risk that his [or her] communications would be viewed as threatening violence." See *Kvasnicka III*, ___ Mich App at___; slip op at 9 (cleaned up).[5]

### C. MALICIOUS USE OF TELECOMMUNICATIONS SERVICE

Defendant also argues the evidence was insufficient to convict him of malicious use of a telecommunications service. We disagree.

Under MCL 750.540e(1)(a), a defendant is guilty of a misdemeanor if they:

[M]aliciously use[] any service provided by a telecommunications service provider with intent to terrorize, frighten, intimidate, threaten, harass, molest, or annoy another person, or to disturb the peace and quiet of another person by . . .

---

[4] This Court recommended that our Supreme Court consider amending M Crim JI 38.4(3). *Kvasnicka III*, ___ Mich App at___ n 4; slip op at 9 n 4.

[5] Defendant also argues that there was insufficient evidence to establish that he threatened an act of terrorism. It is unnecessary for us to address this argument, or his alternative ineffective-assistance-of-counsel argument, because we vacate defendant's terrorist threat conviction and remand in light of *Kvasnicka III*.

[t]hreatening physical harm or damage to any person . . . in the course of a conversation or message through the use of a telecommunications service or device.

"MCL 750.540e is a specific-intent crime . . . ." *In re JP*, 330 Mich App 1, 14; 944 NW2d 422 (2019) (cleaned up). "To be convicted under the statute, a defendant must specifically intend to annoy, terrorize, or disturb the peace of another person, and the defendant must use a telecommunications device to do so." *Id*. (cleaned up).

Defendant does not dispute that he used a telecommunications device to call Judge Tomlinson's office, but argues that there was insufficient evidence that he threatened Judge Tomlinson with physical harm or damage or intended to intend to annoy, terrorize, or disturb the peace of Judge Tomlinson. At trial, defendant testified that he used the term "bogeyman" to mean "justice." He stated that he merely meant that Judge Tomlinson "should be removed from the bench if he's not following the guidelines . . . ." And by stating that Judge Tomlinson was "gonna get smoked[,]" defendant claimed he meant Judge Tomlinson was "going to have to answer for his actions . . . ." Defendant denied that he wanted to hurt Judge Tomlinson; rather, he maintained that he wanted "to take [Judge Tomlinson] through the legal system and make sure that he's . . . following the law like everyone else has to." Judge Tomlinson testified, "[T]he get smoked part . . . was concerning to me because I thought that was a direct threat about some action that would be taken against me." Judge Tomlinson expressed that he was "worried . . . that this was 24 hours later and I was getting another call from the same individual that was making direct, specific threats, and so he hadn't gotten over it." Viewing the evidence in the light most favorable to the prosecution, a jury could reasonably infer that defendant threatened physical harm against Judge Tomlinson and that defendant intended to terrorize, frighten, intimidate, threaten, harass, annoy or to disturb the peace of Judge Tomlinson.

## III. CONCLUSION

For the reasons discussed above, we affirm defendant's conviction of malicious use of a telecommunications service. But we vacate defendant's conviction of making a terrorist threat and remand for a new trial on that count. We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Thomas C. Cameron
/s/ Sima G. Patel