*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

BRADEN LEE REID,

Defendant-Appellant.

UNPUBLISHED
May 27, 2021

No. 349813; 349950
Grand Traverse Circuit Court
LC No. 19-013132-FH

Before: SHAPIRO, P.J., and JANSEN and BECKERING, JJ.

PER CURIAM.

Defendant, Braden Lee Reid, appeals as of right his jury trial convictions for operating while intoxicated, third offense (OWI, third offense), MCL 257.625(1) and (9), assaulting, resisting, or obstructing a police officer (resisting arrest), MCL 750.81d(1), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[1] The trial court sentenced defendant to 85 days in jail (time served) for the OWI, third offense, conviction, 85 days in jail for the resisting arrest conviction, and two years' imprisonment for the felony-firearm conviction. Defendant's convictions arise out of his being found in the driver's seat of his Hummer, which had crashed into a ditch. Defendant was highly intoxicated and in possession of loaded handguns. Because defendant's issues on appeal lack merit, we affirm.

## I. BASIC FACTS

On October 28, 2018, around 2:00 a.m., Timothy O'Brien was driving home from work when he saw a Hummer in the ditch along East Long Lake Road in Grand Traverse County. When

---

[1] To advance the efficient administration of the appellate process, this Court entered an order consolidating defendant's two appeals. *People v Reid*, unpublished order of the Court of Appeals, entered August 22, 2019 (Docket Nos. 349813 and 349950). Defendant filed serial appeals because the judgment of sentence had to be amended after his first appeal to reflect the consecutive nature of his felony-firearm conviction. At the second sentencing, the trial court reduced defendant's sentences for the OWI, third offense and resisting arrest convictions.

-1-

O'Brien pulled over to check on the driver, he saw defendant stumble out of the Hummer's driver's seat. Defendant told O'Brien he was fine, but he asked O'Brien to help him pull his Hummer out of the ditch. O'Brien explained to defendant that his own Chevy Equinox would not be able to pull the Hummer out of the ditch. Despite O'Brien's comment, defendant started to look at the Chevy Equinox for a place to put a tow strap to pull his Hummer out of the ditch. Around this time, O'Brien called his girlfriend, Deanna DeVincent, to inform her that he had stopped to help someone. When it became apparent to O'Brien that defendant was set on getting his vehicle out of the ditch, O'Brien told DeVincent to call 911 because defendant appeared intoxicated and was trying to drive again. Defendant got back into his vehicle and started to rev the engine, but the Hummer would not move. Soon after, O'Brien left the scene.

Deputy Matthew Ruggles arrived at the scene at 2:13 a.m. after being dispatched regarding an accident with an intoxicated driver. When Deputy Ruggles arrived, defendant was seated in the driver's seat of the Hummer with a handgun in his hand. Only a couple minutes later, Deputy Ian Pegan-Naylor arrived. Between the deputies, defendant was given seven commands to get out of the Hummer and drop the handgun. Defendant eventually threw the handgun on the passenger side of the vehicle, got out of the vehicle, and got onto the ground. Deputy Ruggles put defendant in handcuffs and asked him his name, but defendant was nonresponsive. Once Deputy Ruggles was close to defendant, he could tell that defendant appeared intoxicated and had a strong odor of alcohol. While the deputies had been at the scene, they conducted a search of defendant's vehicle. In addition to the handgun Deputy Ruggles saw defendant throw into the Hummer, an additional handgun was found on the floorboard of the driver's seat. Both handguns were loaded. Defendant's identification was found as well as multiple empty beer cans.

After defendant was arrested, Deputy Jeffery Adam O'Brien arrived at the scene. On the basis of defendant's appearance, the deputies called EMS. Deputy O'Brien rode with defendant to the hospital. Once in the ambulance, defendant awoke and became combative and belligerent, and he spoke unintelligibly. Deputy O'Brien obtained a warrant for a blood draw, the result of which indicated that defendant had a 0.245 blood alcohol content (BAC). Defendant was charged, filed an unsuccessful motion to suppress "all evidence of his arrest," and convicted as described above.

## II. PREDICATE OFFENSE FOR FELONY FIREARM

On appeal, defendant first argues that his felony-firearm conviction must be vacated because the predicate offense, OWI-third offense, is a misdemeanor; therefore, it cannot serve as the underlying offense for the felony-firearm conviction. We disagree.

"The interpretation and application of statutes present questions of law that are [ ]reviewed de novo." *People v Kennedy*, 502 Mich 206, 213; 917 NW2d 355 (2018).

"The primary goal of statutory interpretation is to give effect to the intent of the Legislature." *People v Barrera*, 278 Mich App 730, 735; 752 NW2d 485 (2008). "The objective of statutory interpretation is to discern the intent of the Legislature from the plain language of the statute." *Id.* at 735-736. "We begin by examining the plain language of the statute; where that language is unambiguous, we presume that the Legislature intended the meaning clearly

expressed—no further judicial construction is required or permitted, and the statute must be enforced as written." *Id*. at 736 (citation and quotation marks omitted).

"The Michigan Vehicle Code, MCL 257.1 *et seq*., prohibits a person from operating a motor vehicle while intoxicated." *People v Rea*, 500 Mich 422, 428; 902 NW2d 362 (2017). MCL 257.625(1) provides, in relevant part:

> (1) A person, whether licensed or not, shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state if the person is operating while intoxicated. As used in this section, "operating while intoxicated" means any of the following:

> (a) The person is under the influence of alcoholic liquor, a controlled substance, or other intoxicating substance or a combination of alcoholic liquor, a controlled substance, or other intoxicating substance.

> (b) The person has an alcohol content of 0.08 grams or more per 100 milliliters of blood, per 210 liters of breath, or per 67 milliliters of urine or, beginning October 1, 2021, the person has an alcohol content of 0.10 grams or more per 100 milliliters of blood, per 210 liters of breath, or per 67 milliliters of urine.

MCL 257.625(9) provides, in relevant part:

> (9) If a person is convicted of violating subsection (1) or (8), all of the following apply:

> (a) Except as otherwise provided in subdivisions (b) and (c), the person is guilty of a *misdemeanor* punishable by 1 or more of the following:

> (*i*) Community service for not more than 360 hours.

> (*ii*) Imprisonment for not more than 93 days, or, if the person is convicted of violating subsection (1)(c), imprisonment for not more than 180 days.

> (*iii*) A fine of not less than $100.00 or more than $500.00, or, if the person is guilty of violating subsection (1)(c), a fine of not less than $200.00 or more than $700.00.

> * * *

> (c) *If the violation occurs after 2 or more prior convictions, regardless of the number of years that have elapsed since any prior conviction, the person is guilty of a felony* and must be sentenced to pay a fine of not less than $500.00 or more than $5,000.00 and to either of the following:

> (*i*) Imprisonment under the jurisdiction of the department of corrections for not less than 1 year or more than 5 years.

(*ii*) Probation with imprisonment in the county jail for not less than 30 days or more than 1 year and community service for not less than 60 days or more than 180 days. Not less than 48 hours of the imprisonment imposed under this subparagraph must be served consecutively. [Emphasis added.]

Defendant was charged with and convicted of OWI, third offense, in violation MCL 257.625(1) and MCL 257.625(9)(c). Defendant does not dispute that he has two prior OWI convictions. Thus, he was convicted of a felony under MCL 257.625(9)(c) and sentenced accordingly. See also *People v Cook*, 323 Mich App 435, 438; 918 NW2d 536 (2018) (stating that "[t]he prosecutor initially charged defendant with one count of operating while intoxicated, third offense, which is a felony in violation of MCL 257.625(1) and (9)(c)").

Moreover, the felony-firearm statute provides that "[a] person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony, except a violation of [MCL 750.223], [MCL 750.227], [MCL 750.227a], or [MCL 750.230], is guilty of a felony and shall be punished by imprisonment for 2 years." MCL 750.227b(1). None of the exceptions provided are applicable here. In *People v Washington*, 501 Mich 342, 353; 916 NW2d 477 (2018), our Supreme Court stated that, "[a]s mandated by the Legislature, this Court must interpret the term 'felony' in the Penal Code to mean an offense that is punishable 'by imprisonment in state prison' upon the defendant's conviction.' " The *Washington* Court further stated:

According to Michigan's Code of Criminal Procedure, a defendant may be imprisoned in a "state penal institution," as opposed to a "county jail," if the punishment for the offense is more than one year's imprisonment. In other words, an offense punishable by more than one year's imprisonment would be an offense for which an individual may be imprisoned in a state prison. Accordingly, the Legislature clearly expressed its intent that a person is guilty of felony-firearm under the Penal Code if he or she carries or possesses a firearm when committing or attempting to commit an offense that is punishable by imprisonment for more than one year. [*Id*. at 354-355.]

Under MCL 257.625(9)(c)(*i*), OWI, third offense, is punishable by "[i]mprisonment under the jurisdiction of the department of corrections for not less than 1 year or more than 5 years." Thus, OWI, third offense, is a felony and can serve as an underlying felony for felony-firearm.

Further, in *People v Adair*, 184 Mich App 703, 704-705; 458 NW2d 666 (1990), this Court held that, under the plain meaning of MCL 257.625, operating a motor vehicle under the influence of intoxicating liquor (OUIL) is a felony and can serve as the underlying felony for a felony-firearm conviction. In *Adair*, the prosecution appealed the circuit court's order dismissing the defendant's felony-firearm charge on the basis that OUIL could not serve as an underlying felony for a felony-firearm conviction. *Id*. at 703-704. This Court provided the following:

By the plain language of the statute, operating a motor vehicle while under the influence of intoxicating liquor, third offense, MCL 257.625(6); MSA 9.2325(6), is a felony. We are constrained to follow and apply the "plain meaning" of the statutes as set forth by the Legislature. Under the "plain meaning" rule, if the language used by the Legislature is clear and unambiguous, no judicial

interpretation of the statute is permitted. *Wymer v Holmes*, 429 Mich 66, 76; 412 NW2d 213 (1987);[2] *People v Tucker*, 177 Mich App 174, 178; 441 NW2d 59 (1989). Further, a cardinal rule of statutory construction is that the express mention of one thing in the statute generally implies the exclusion of other similar things. By expressly excluding two felonies, the felony-firearm statute, by implication, applies to all other felonies. *People v Elowe*, 85 Mich App 744; 272 NW2d 596 (1978). On the basis of the clear language of the felony-firearm statute and the OUIL statute, we find that the felony-firearm statute applies in the present situation. [*Id*. at 704-705.]

Although defendant was convicted of OWI, third offense, not OUIL specifically, "OWI is a hybrid version of two offenses: MCL 257.625(1)(a) prohibits operating a motor vehicle under the influence of intoxicating liquor (OUIL) and MCL 257.625(1)(b) prohibits operating with an unlawful bodily alcohol content (UBAL)." *People v Hyde*, 285 Mich App 428, 447-448; 775 NW2d 833 (2009).

Here, the jury was instructed that, in order to find defendant guilty of "operating a motor vehicle while intoxicated," it had to find that "defendant was either under the influence of alcohol while operating the vehicle [OUIL], or that the defendant operated the vehicle with a bodily alcohol content of .08 grams or more per 100 milliliters of blood [UBAL]." Although it is not known under which, if not both, the jury found defendant guilty, both are versions of OWI and subsections of MCL 257.625(1); thus, both are felonies under MCL 257.625(9)(c). Accordingly, the holding in *Adair*, regarding OUIL, third offense, applies to defendant's conviction for OWI, third offense. Therefore, under the plain language of MCL 257.625(1) and MCL 257.625(1)(9)(c), OWI, third offense, may serve as an underlying felony for felony-firearm. Defendant is not entitled to have his conviction for felony-firearm vacated.

## III. OPERATION OF A MOTOR VEHICLE

Defendant next argues there was insufficient evidence presented to establish that he "operated" his vehicle. We disagree.

This Court reviews de novo a challenge to the sufficiency of the evidence. *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019). "We review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution proved the crime's elements beyond a reasonable doubt." *Id*. "Conflicting evidence and disputed facts are to be resolved by the trier of fact." *Id*. "[C]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011) (citation and quotation marks omitted).

---

[2] *Wymer* was overruled on other grounds by *Neal v Wilkes*, 470 Mich 661, 665-667; 685 NW2d 648 (2004).

-5-

Under MCL 257.35a of the Motor Vehicle Code, "operate" or "operating" means one or more of the following:

> (a) Being in actual physical control of a vehicle. This subdivision applies regardless of whether or not the person is licensed under this act as an operator or chauffeur.

> (b) Causing an automated motor vehicle to move under its own power in automatic mode upon a highway or street regardless of whether the person is physically present in that automated motor vehicle at that time. This subdivision applies regardless of whether the person is licensed under this act as an operator or chauffeur. As used in this subdivision, "causing an automated motor vehicle to move under its own power in automatic mode" includes engaging the automated technology of that automated motor vehicle for that purpose.

In *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004), this Court concluded that circumstantial evidence that the defendant had driven his vehicle intoxicated *before* the police arrived was sufficient for the jury to conclude that the defendant had operated his vehicle. In *Solmonson*, around 3:45 a.m., the police found the defendant unconscious in the driver's seat of his vehicle with an open beer can between his legs. *Id*. at 660. The car was parked just outside the white fog lines, but was still on the road pavement. *Id*. The engine was off, but the keys were in the ignition and the engine was still warm. *Id*. The police found five full cans of beer on the passenger seat and an empty beer can in the backseat. *Id*. Defendant was alone and there was no one else in the area. *Id*. On appeal, the defendant argued that "he was not 'operating' the parked car when the police found him unconscious in the driver's seat, and there was reasonable doubt that he drove to that location while intoxicated." *Id*. at 662. This Court noted that "the trial court specifically instructed the jury regarding the element of 'operating' that a person 'sleeping in a motionless car . . . cannot be held to be presently operating a vehicle.' " *Id*. at 663. Because juries are presumed to follow their instructions, this Court concluded that

> the jury must have concluded from the circumstantial evidence and reasonable inferences that the prosecutor met his burden of proving defendant was operating the vehicle in an intoxicated state before the police arrived. Because this Court must draw all reasonable inferences in favor of the jury verdict, defendant's conviction must be affirmed. [*Id*. (citation omitted).]

See also *People v Schinella*, 160 Mich App 213, 216; 407 NW2d 621 (1987) (stating that, because the defendant clearly was not "operating" his vehicle at the time of his arrest, "the question to be decided is whether there was sufficient direct or circumstantial evidence that defendant had operated his vehicle while under the influence at some point *before* he was arrested").

Here, the jury could conclude, on the basis of overwhelming circumstantial evidence, that defendant operated the Hummer and caused it to go into the ditch *prior* to any of the witnesses

seeing him.[3] When O'Brien stopped his vehicle to check on defendant, defendant "kind of stumbled out" of the driver's seat of the Hummer and asked O'Brien to help him pull his Hummer out of the ditch. Defendant got back into the driver's side of the Hummer and revved the engine. O'Brien did not see anyone else on the scene. Deputy Ruggles testified that, when he arrived at the scene, defendant was in the driver's seat of the Hummer. There was nobody else in the vehicle and neither Deputy Ruggles, Deputy Peyton Naylor, nor Deputy O'Brien saw anyone else in the area. The Hummer was registered to defendant, and his identification was found in the vehicle. Defendant only lived ¼ mile from the accident site. Further, Deputy Ruggles testified that, on the basis of the evidence at the scene, including the position of Hummer, a dent in the guardrail, and debris and tire marks on the road, it appeared that defendant had been driving northbound, left the road, hit the guardrail, and ended up in the ditch on the southside of the road. Further, the evidence indicated that defendant not only smelled of alcohol, but he appeared visibly intoxicated. Since there were no obvious road or weather conditions that would cause a vehicle to go off the road, defendant's intoxication supported the conclusion that he had been driving the Hummer and crashed in the ditch.

Upon review of this evidence, the jury could conclude from circumstantial evidence and reasonable inferences that defendant had been operating the Hummer and caused it to crash into the ditch. Thus, defendant's contention that his conviction for OWI, third offense, must be vacated because there was no evidence that he had "operated" the vehicle is without merit.

IV. JURY INSTRUCTIONS

Defendant argues that the trial court erred in instructing the jury that the attempted operation of the Hummer was sufficient to convict defendant of OWI, third offense. Defendant also contends that the trial court erred in instructing the jury that the attempted operation of the Hummer was sufficient to convict him of felony-firearm. We disagree with both of defendant's arguments.

"A party must object or request a given jury instruction to preserve the error for review." *People v Sabin (On Second Remand)*, 242 Mich App 656, 657; 620 NW2d 19 (2000). In the trial court, defendant objected to the jury instruction for felony-firearm on the basis that attempted OWI, third offense, was not a crime; and therefore, could not constitute the underlying felony to support a felony-firearm conviction. Thus, this issue is preserved for appellate review. Defendant did not object to the jury instruction for OWI, third offense. "Claims of instructional error are generally reviewed de novo by this Court[.]" *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). This Court reviews unpreserved issues for plain error. *People v Solloway*, 316 Mich App 174, 197; 891 NW2d 255 (2016). To establish plain error, "it must be found that (1) an error occurred, (2) the error was plain or obvious, and (3) the plain error affected the defendant's substantial rights." *Id.* "The third requirement generally requires a showing of prejudice, i.e., that

---

[3] In light of the overwhelming circumstantial evidence that defendant had driven his Hummer into the ditch while intoxicated, we need not address defendant's claim that revving his engine—which O'Brien perceived as defendant attempting to get his vehicle out of the ditch—cannot qualify as "operating" the vehicle because it was inoperable at that point.

the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999).

Defendant argues that the trial court erred when it instructed the jury that an *attempt* to operate a vehicle while intoxicated was sufficient to "satisfy the requirements for a conviction under the OWI statute when it was clear that the vehicle could not be operated." As support for this argument, defendant references the trial court's jury instruction for felony-firearm. The trial court did not instruct the jury that an attempt to operate a vehicle while intoxicated was sufficient to satisfy the requirements of OWI, third offense.

While reading the final jury instructions, the court instructed the jury of the elements of felony-firearm:

> Now, the defendant is also charged with the separate crime of possessing a firearm at the time he committed or attempted to commit the crime of operating while intoxicated. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:
>
> First, that the defendant committed or attempted to commit the crime of operating while intoxicated, which will be defined for you shortly. It's not necessary, however, that the defendant be convicted of that crime. Second, that at the time the defendant committed or attempted to commit that crime, he knowingly carried or possessed a firearm.

The trial court also instructed the jury of the elements of OWI, third offense. The trial court stated, in part:

> The defendant is charged with operating a motor vehicle while intoxicated by, one, operating a vehicle while under the influence of alcohol, or—and, two, operating a motor vehicle with an unlawful blood-alcohol level. To prove that the defendant operated while intoxicated, the prosecutor must prove each of the following elements beyond a reasonable doubt:
>
> First, that the defendant was operating a motor vehicle on or about October 28 of 2018. Operating means driving or having actual physical control of the vehicle. Second, that the defendant was a vehicle [sic] on a highway or other place open to the public or generally accessible to motor vehicles. Generally accessible to motor vehicles means that motor vehicles are usually capable of reaching that area.

As illustrated above, the trial court instructed the jury that, in order to convict defendant of felony-firearm, it must find that defendant either committed or attempted to commit the crime of OWI, third offense. "A person who carries or has in his or her possession a firearm when he or she commits or *attempts* to commit a felony . . . is guilty of a felony and shall be punished by imprisonment for 2 years." MCL 750.227b(1) (emphasis added). OWI, third offense, was the underlying felony of which the jury needed to find that defendant either committed or attempted to commit in order to find him guilty of felony-firearm. Thus, the trial court properly instructed

the jury of the elements of felony-firearm and the fact that an attempt to commit OWI, third offense, was sufficient. However, the trial court did not instruct the jury that the attempted operation of a vehicle was sufficient to find defendant guilty of OWI, third offense. Therefore, the trial court did not err in instructing the jury.

To the extent defendant argues that the trial court could not instruct the jury that the attempt to commit OWI, third offense, was sufficient to convict him of felony-firearm because attempted OWI, third offense, is not a felony, the argument is without merit. Felony-firearm only requires that a person attempt to commit a felony. As stated earlier, OWI, third offense, is a felony. It is irrelevant whether an attempt to commit OWI, third offense, is a separate felony from OWI, third offense. Thus, it was not an error for the trial court to instruct the jury that an attempt to commit OWI, third offense, was sufficient to satisfy a felony-firearm conviction.

## V. SEARCH AND SEIZURE

### A. PROBABLE CAUSE TO ARREST AND SEARCH THE VEHICLE

Defendant argues that the trial court erred when it denied his motion to suppress the evidence against him because the police lacked probable cause to arrest him and to subsequently conduct a warrantless search of his vehicle. We disagree.

This Court reviews de novo a trial court's decision to deny a motion to suppress. *People v Henry (After Remand)*, 305 Mich App 127, 137; 854 NW2d 114 (2014). "The trial court's factual findings are reviewed for clear error, and the underlying constitutional issues, including whether a Fourth Amendment violation occurred, are reviewed de novo." *Id*. (citation omitted.) "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Anderson*, 284 Mich App 11, 13; 772 NW2d 792 (2009) (citation and quotation marks omitted).

"The Fourth Amendment of the United States Constitution and its counterpart in the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures." *People v Woodard*, 321 Mich App 377, 383; 909 NW2d 299 (2017) (citation and quotation marks omitted). "Probable cause to arrest exists where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *People v Cohen*, 294 Mich App 70, 75; 816 NW2d 474 (2011) (citation and quotation marks omitted).

"Ordinarily, searches or seizures conducted without a warrant are unreasonable per se," and "when evidence has been seized in violation of the constitutional prohibition against unreasonable searches and seizures, it must be excluded from trial." *Woodard*, 321 Mich App at 387 (citation and quotation marks omitted). "However, there are exceptions to the warrant requirement[.]" *Id*. "One of the well-established exceptions to the warrant requirement is known as the automobile or motor vehicle exception." *People v Kazmierczak*, 461 Mich 411, 418; 605 NW2d 667 (2000). "[U]nder the automobile exception, the police may search a motor vehicle without the necessity of first obtaining a warrant if probable cause to support the search exists." *Id*. at 418-419. Probable cause to search exists when "there is a 'substantial basis' for inferring a

'fair probability' that contraband or evidence of a crime will be found in a particular place." *Id*. at 417-418.

Here, Deputy Ruggles and Deputy Peyton-Naylor were dispatched to the scene around 2:00 a.m., with information that there was an accident and an intoxicated driver. When Deputy Ruggles arrived, he saw defendant's vehicle on the side of the road and defendant seated in the driver's seat. Deputy Ruggles saw that defendant had a handgun in his hand. When Deputy Ruggles instructed defendant to drop the handgun, defendant dropped the gun despite his response being delayed. It took approximately seven commands between Deputy Ruggles and Deputy Peyton-Naylor for defendant to exit the vehicle. Defendant smelled of intoxicants and there was nobody else in the area.

The police had probable cause to believe a crime had been committed and that evidence of that crime would be found in the vehicle. Thus, they had probable cause to arrest defendant and search the vehicle. As stated earlier, "[a] person . . . shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles . . . within this state if the person is operating while intoxicated." MCL 257.625(1). On the basis of the information available to Deputy Ruggles and Deputy Peyton-Naylor, they had probable cause to believe that defendant had committed the crime of OWI and that evidence of this crime would be found in the vehicle.

Moreover, carrying a concealed weapon is a crime. Under MCL 750.227(2), "[a] person shall not carry a pistol . . . whether concealed or otherwise, in a vehicle operated or occupied by the person . . . without a license to carry the pistol as provided by law and if licensed, shall not carry the pistol in a place or manner inconsistent with any restrictions upon such license." The evidence indicates that defendant had a handgun in his hand, and while seated in the car, defendant dropped the handgun. On the basis of this evidence, Deputy Ruggles and Deputy Peyton-Naylor could reasonably infer that a handgun would be found inside the vehicle. Thus, the police had probable cause to search the vehicle. The trial court did not err in declining to suppress the evidence seized as a result of this search.

## B. WARRANT FOR A BLOOD DRAW

Defendant also argues that the trial court erred in denying his motion to suppress the evidence against him because the affidavit to support the warrant for a blood draw was insufficient. We disagree.

"We grant deference to a magistrate's determination of probable cause to issue a search warrant." *People v Czuprynski*, 325 Mich App 449, 469; 926 NW2d 282 (2018). In *Czuprynski*, this Court stated:

> In sum, a search warrant and the underlying affidavit are to be read in a common-sense and realistic manner. Affording deference to the magistrate's decision simply requires that reviewing courts ensure that there is a substantial basis for the magistrate's conclusion that there is a fair probability that contraband or evidence of a crime will be found in a particular place. [*Id*. at 469-470 (quotation marks and citation omitted).]

-10-

In this case, the affidavit stated the following:

> On 10. 28-18 [sic] at 0200 hours a caller indicated there was a car off the road somewhere near East Long Lake Road and W Long Lake Rd. Deputies responded to the area and found a car off the road with a single male standing by the driver side door. The subject was seen to be holding a pistol and was ordered by deputies to drop it. The subject then threw the firearm into the car and was taken into custody. The subject has no CPL, is discharged from parole, and currently a suspended driver.

> Once taken into custody the subject became unresponsive and had a heavy odor of intoxicants coming from his person. Multiple empty beer cans were viewed in the interior of the vehicle as well as two loaded pistols. Once EMS arrived the subject awoke and was increasingly belligerent and combative. The vehicle on scene was registered to the subject and there were no signs that anyone else had been around.

Thus, the affidavit asserted that defendant's vehicle had gone off the road in the early morning hours, he smelled heavily of intoxicants, and multiple empty beer cans were found inside the vehicle. Moreover, the fact that defendant became unresponsive, awoke once EMS arrived, and then became belligerent and combative supports that he was intoxicated. Therefore, the affidavit contained sufficient evidence for the magistrate to conclude that probable cause existed that a crime had been committed and that there was a fair probability that a blood sample would establish that defendant had alcohol in his blood.

Furthermore, even if a search warrant did not establish probable cause, if "the officer's reliance on the issuing judge's finding of probable cause nevertheless was objectively reasonable," then "the fruits of the search nevertheless would not be suppressed." *Id*. at 471. The *Czuprynski* Court explained that there are three exceptions to this rule:

> Reliance on a warrant is reasonable even if the warrant is later invalidated for lack of probable cause, except under three circumstances: (1) if the issuing magistrate or judge is misled by information in the affidavit that the affiant either knew was false or would have known was false except for his or her reckless disregard of the truth; (2) if the issuing judge or magistrate wholly abandons his or her judicial role; or (3) if an officer relies on a warrant based on a "bare bones" affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. [*Id*. at 471-472.]

In the trial court, defendant contended that because the affidavit failed to establish probable cause, the magistrate could not have been neutral when issuing the warrant. On appeal, in regard to the first and second exceptions, defendant makes no claim that the magistrate was not neutral, abandoned her judicial role, or that Deputy O'Brien knew, or should have known, that information in the affidavit was false. In addition, the third exception does not apply because there was probable cause to issue the warrant for a blood draw as stated earlier; thus, the affidavit was not "bare bones" so lacking "indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id*.

Rather, defendant contends that the affidavit was insufficient because it was based upon hearsay and included a statement that was inconsistent with testimony presented later. Defendant does not assert which statements in the affidavit were hearsay. Nonetheless, "probable cause may be founded upon hearsay." *Id*. at 470 n 4, quoting *Franks v Delaware*, 438 US 154, 165; 98 S Ct 2674; 57 L Ed 2d 667 (1978). See also *People v Poole*, 218 Mich App 702, 706; 555 NW2d 485 (1996) (concluding that hearsay statements in an affidavit "may be used to establish probable cause where the ordinary requirements of personal knowledge and reliability or credibility are met").

Defendant also argues that the affidavit included statements that were inconsistent with testimony presented at a later date. Specifically, defendant points out that the affidavit stated that defendant was outside of the vehicle when the deputies arrived, which is contrary to testimony provided later. In the affidavit, Deputy O'Brien wrote that "[d]eputies responded to the area and found a car off the road with a single male standing by the driver side door." At the preliminary hearing and the hearing on defendant's motion to suppress the evidence against him, Deputy Ruggles testified that when he arrived at the scene, he saw defendant sitting in the driver's seat. Thus, the statement in the affidavit that defendant had been standing outside of the vehicle was inconsistent with Deputy Ruggles's subsequent testimony. Defendant explored this discrepancy during Deputy O'Brien's cross-examination at trial. Deputy O'Brien explained that he used statements from other officers to prepare the affidavit and that he could have misunderstood the reports provided by officers at the scene.

At any rate, "only when material misstatements or omissions *necessary to the finding of probable cause* have been made should a search warrant be invalidated." *Czuprynski*, 325 Mich App at 471. Whether defendant was seated in the driver's seat or standing outside the vehicle is not material to a finding of probable cause. Even if the inconsistent statement had been omitted, there was sufficient evidence to establish probable cause for a search warrant, including evidence that defendant smelled of intoxicants, there were empty beer cans in his vehicle, he acted belligerent in the ambulance, his vehicle was off the road, and he was the only one in the area. On the basis of the evidence presented in the affidavit, there was a substantial basis for the magistrate's finding of probable cause.

On appeal, defendant also argues that the affidavit was insufficient because it did not state the specific crime that led the police to seek a warrant for a blood draw. Defendant provides no support for the argument that the affidavit itself must state a specific crime for which the warrant is being requested. An appellant cannot "leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001). However, in defendant's Standard 4 Brief,[4] he raises a similar issue—whether the search warrant for a blood draw failed to meet the particularity requirement by failing to state the specific crime for which the warrant was being requested.

---

[4] Defendant's Standard 4 Brief was filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4.

"The Fourth Amendment requires that search warrants 'particularly describ[e] the place to be searched, and the persons or things to be seized.' " *People v Hughes*, ___ Mich ___, ___; ___ NW2d ___ (2020) (Docket No. 158652); slip op at 22, quoting US Const, Am IV. A search warrant "must state with particularity not only the items to be searched and seized, but also the alleged criminal activity justifying the warrant." *Hughes*, ___ Mich at ___; slip op at 22. "That is, some context must be supplied by the affidavit and warrant that connects the particularized descriptions of the venue to be searched and the objects to be seized with the criminal behavior that is suspected, for even particularized descriptions will not always speak for themselves in evidencing criminality." *Id.* The "particularity requirement defines the permissible scope of a search pursuant to a warrant, and any deviation from that scope is a warrantless search that is unreasonable absent an exception to the warrant requirement." *Id.* at 23.

The warrant for the blood draw stated that there is "probable cause to . . . seize and procure a blood sample" from defendant. Thus, the warrant stated that the search pertained to defendant and his blood was to be seized. Although the warrant did not state the specific crime for which the blood was being obtained, the affidavit to support the warrant stated, with particularity, facts to establish that there was probable cause of criminal activity. The affidavit stated that the Hummer was found off the road with only defendant in the area at approximately 2:00 a.m. The vehicle was registered to defendant, only his identification was found in the vehicle, he had a heavy odor of intoxicants, and there were empty beer cans inside the vehicle. Defendant also became unresponsive when taken into custody, and upon waking, he was belligerent and combative. This was sufficient evidence to establish probable cause for OWI. Thus, the affidavit and the warrant together described who was to be searched, what was to be seized, and particular evidence of criminal activity related to the particular search and seizure. Thus, the trial court did not err in denying defendant's motion to suppress the evidence against him on the basis that the warrant or supporting affidavit failed to state a specific crime or criminal charge for which the warrant was being requested.

## VI. RIGHT TO REMAIN SILENT

Defendant argues that his Fifth Amendment right to remain silent was violated when the prosecution used his postarrest silence as evidence of his guilt in its case-in-chief. We disagree.

"Constitutional challenges must be raised in the trial court; otherwise, those challenges are not properly preserved for appellate review." *People v Green*, 322 Mich App 676, 681; 913 NW2d 385 (2018) (citation and quotation marks omitted). In the trial court, defendant did not raise the issue of whether his Fifth Amendment right to remain silent was violated when the prosecution used his postarrest silence as evidence of his guilt in its case-in-chief. Thus, this issue is not preserved for appellate review.

"This Court reviews de novo constitutional issues[.]" *People v Wiley*, 324 Mich App 130, 150; 919 NW2d 802 (2018). However, this Court reviews unpreserved constitutional issues for plain error. *Id.*

"The United States Constitution guarantees that no person 'shall be compelled in any criminal case to be a witness against himself.' " *People v Shafier*, 483 Mich 205, 212; 768 NW2d 305 (2009), quoting US Const, Am V. Under *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16

L Ed 2d 694 (1966), "every person subject to interrogation while in police custody must be warned, among other things, that the person may choose to remain silent in response to police questioning." *Shafier*, 483 Mich at 212. "As a general rule, if a person remains silent after being arrested and given *Miranda* warnings, that silence may not be used as evidence against that person." *Id*. Therefore, "a defendant's post-arrest, post-*Miranda* silence cannot be used to impeach a defendant's exculpatory testimony, or as direct evidence of defendant's guilt in the prosecutor's case-in-chief." *Id*. at 213-214 (citations and footnote omitted). "Thus, where a defendant has received no *Miranda* warnings, no constitutional difficulties arise from using the defendant's silence before or after his arrest as substantive evidence unless there is reason to conclude that his silence was attributable to the invocation of the defendant's Fifth Amendment privilege." *Solmonson*, 261 Mich App at 665. "A defendant may assert his or her right to remain silent at any time, however, the assertion must be unequivocal." *Henry*, 305 Mich App at 145 (citations omitted).

During the trial, Deputy Ruggles testified that after defendant got out of his vehicle, Deputy Ruggles tried to ask him what was going on, but defendant "wouldn't respond to any questions." The following transpired:

> [*Prosecutor*]: Nothing—
>
> [*Deputy Ruggles*]: Nothing.
>
> [*Prosecutor*]*:* You asked him his name, he gave nothing?
>
> [*Deputy Ruggles*]: Correct, nothing.

There is no indication in the record that defendant was read his *Miranda* rights or that he unequivocally invoked his right to remain silent. Rather, the record indicates that defendant was unresponsive because he was incoherent. Defendant appeared intoxicated, had "labored breathing or a cough," and appeared to need to vomit at one point. Defendant's lack of response and physical state led the deputies to believe they needed to call Emergency Medical Services (EMS) to assess him. Moreover, when defendant awoke when EMS arrived, he spoke unintelligibly and became combative and belligerent. Thus, the evidence indicates that defendant's silence was not an invocation of his right to remain silent, but rather, an indication of his physical state and an inability to respond. Because there is no indication that defendant's silence occurred post-*Miranda* or after having unequivocally invoked his right to remain silent, any reference to defendant's silence did not violate defendant's Fifth Amendment rights.

In addition, there is no indication that the prosecutor intended to imply that defendant had invoked his right to remain silent and that his silence signified his guilt. Rather, it appears the prosecutor was highlighting defendant's inability to respond as evidence of his intoxication. Thus, the prosecutor's question did not implicate defendant's Fifth Amendment rights. Finally, "the simple asking of a defendant's name is not interrogation or an investigative question requiring the issuance of *Miranda* warnings." *People v Armendarez*, 188 Mich App 61, 73; 468 NW2d 893 (1991). Therefore, defendant's Fifth Amendment right to remain silent was not violated.

Defendant argues that the trial court committed plain error when it allowed Deputy Ruggles to provide opinion testimony regarding how the Hummer went off the road when he was not qualified as an expert in accident reconstruction. We disagree.

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). At trial, defendant did not object to Deputy Ruggles's opinion testimony regarding how defendant's vehicle went into the ditch.

"This Court reviews a trial court's decision to admit or exclude evidence for an abuse of discretion." *Dobek*, 274 Mich App at 93. "A trial court necessarily abuses its discretion when the court permits the introduction of evidence that is inadmissible as a matter of law." *Id*. "An error in the admission or exclusion of evidence will not warrant reversal unless refusal to do so appears inconsistent with substantial justice or affects a substantial right of the opposing party." *Id*. However, this Court reviews unpreserved issues for plain error. *Solloway*, 316 Mich App at 197.

MRE 701 governs the admissibility of opinion testimony from a lay witness:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

MRE 702 governs the admissibility of opinion testimony from an expert witness:

If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

This Court has held that a police officer may provide lay opinion testimony regarding observations when his or her "*opinion* [*was*] *formed as a result of those observations*." *People v Oliver*, 170 Mich App 38, 50; 427 NW2d 898 (1988), modified and remanded on other grounds 433 Mich 862 (1989). However, "a witness cannot express an opinion on the defendant's guilt or innocence of the charged offense[.]" *People v Fomby*, 300 Mich App 46, 53; 831 NW2d 887 (2013) (quotation marks and citation omitted).

During direct examination, the prosecutor asked Deputy Ruggles why he had walked around the scene and taken pictures, to which Deputy Ruggles explained that it is part of his job to investigate and document how an accident occurred. The prosecution asked Deputy Ruggles whether he had an opinion as to how the accident occurred. Deputy Ruggles answered in the affirmative and provided the following response:

So starting at the vehicle—let's see a picture. This might be hard to see. But you can see the vehicle on the south side of the road, facing this way (indicating) in the ditch. And—so then from there, follow—I followed marks and debris towards the guardrail. You can see there's a dent in the guardrail (indicating).

More debris kicked up and tire marks, showing that a vehicle came from the south. So I continued following the marks on the road—rocks kicked up, stuff like that, to the south, and was able to get back closer to Huellmantel Lake Road. Here's the guardrail where it had struck the first time (indicating). And then you can see there's more tracks, the vehicle had come along the side of the road and been going northbound, went off the side of the road, hit the guardrail and ended up on the other side of the road in the ditch.

There was nothing "scientific" or "technical" about Deputy Ruggles's testimony. Deputy Ruggles did not testify that he relied on specialized knowledge to form his conclusion as to how the Hummer got into the ditch, nor does such an opinion require such specialized knowledge or expertise. Deputy Ruggles took pictures of the scene as part of his investigation, described to the jury what he saw in those pictures, and testified as to how he believed the accident occurred on the basis of the position of the Hummer, tire tracks, debris in the road, and dents on the guardrail. These were only Deputy Ruggles's opinions or inferences "rationally based on" his perception of the scene. Moreover, because Deputy Ruggles was at the scene, his testimony was helpful to explain what the scene looked like as a whole, and to give context to the photographs admitted into evidence. The average person at the scene could have formed the same opinion as Deputy Ruggles, and it did not require an expert in accident reconstruction. In addition, Deputy Ruggles did not state an opinion as to whether defendant was guilty of any of the charges against him. He merely testified as to how he believed the Hummer got into the ditch. Thus, it was not plain error for the trial court to allow Deputy Ruggles to give his opinion as to how the accident occurred.

## VIII. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that trial counsel provided ineffective assistance of counsel for failing to object to Deputy Ruggles's opinion testimony. We disagree.

In order to preserve a claim of ineffective assistance of counsel, a defendant must move for a new trial or a *Ginther*[5] hearing with the trial court. *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014). Defendant did not file a motion for a new trial or a *Ginther* hearing in the trial court.

"Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *Solloway*, 316 Mich App at 187. "Generally, a trial court's findings of fact, if any, are reviewed for clear error, and questions of law are reviewed de novo." *Id*. at 188. However, because defendant did not move for a new trial or a *Ginther* hearing in the trial court, no factual record was created in regard to defendant's claim of ineffective

---

[5] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

assistance of counsel. Therefore, this Court's review is limited to mistakes apparent on the record. *Id*.

Despite the fact that defendant has not shown that it was plain error for the trial court to allow Deputy Ruggles to provide opinion testimony as to how the accident occurred, that does not preclude this Court from determining whether defense counsel was ineffective for failing to object to the trial court's ruling. In *People v Randolph*, 502 Mich 1, 5; 917 NW2d 249 (2018), our Supreme Court held that "even when a defendant cannot succeed on a claim being reviewed for plain error, courts may not simply conclude, without independent consideration, that a defendant is unable to succeed on an ineffective-assistance claim relating to the same underlying issue."

In order to prevail on a claim of ineffective assistance of counsel, a defendant has the burden of establishing that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012) (citation and quotation marks omitted). "[T]rial counsel cannot be faulted for failing to raise an objection or motion that would have been futile." *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998).

Deputy Ruggles's testimony as to how the accident occurred was proper opinion testimony. He was not required to provide scientific data as to how the accident occurred. Further, he merely provided his opinion on how the accident occurred based upon his own observations and perceptions of the scene and photographs taken at the scene. Thus, it would have been futile for trial counsel to object to Deputy Ruggles's opinion testimony.

Moreover, even if trial counsel had objected to Deputy Ruggles's testimony and Deputy Ruggles had been prohibited from testifying regarding his belief as to how the accident occurred, defendant has failed to show there is a reasonable probability that the trial outcome would have been different. There was ample circumstantial evidence for the jury to conclude that defendant had driven his Hummer, while intoxicated, and crashed into the ditch. Deputy Ruggles's testimony as to how exactly the Hummer made it from the road to the ditch did not negate the evidence that defendant had driven the Hummer. Thus, trial counsel did not provide ineffective assistance of counsel for failing to object to Deputy Ruggles's opinion testimony.

IX. SCOPE OF A SEARCH WARRANT

In defendant's Standard 4 Brief, he argues that the evidence of his BAC should have been suppressed because testing his blood for alcohol exceeded the scope of the warrant.[6] We disagree.

---

[6] In defendant's Standard 4 Brief, he also argues that the search warrant for a blood draw was insufficient because it failed to state the specific offense for which the warrant was being requested. This issue was already addressed earlier in this opinion because a similar issue was also raised in his appellate brief.

Defendant failed to preserve this argument by raising it in a motion to suppress in the trial court. *People v Gentner*, *Inc*, 262 Mich App 363, 368; 686 NW2d 752 (2004). Thus, this issue is reviewed for plain error affecting defendant's substantial rights. *Solloway*, 316 Mich App at 197.

Defendant contends that performing a forensic test on his blood exceeded the scope of the warrant because the warrant stated that it only authorized drawing defendant's blood, not testing it for alcohol. Further, he contends that the testing of his blood was a separate search. On the basis of the facts presented in the affidavit, the sole purpose for drawing defendant's blood was to test the blood for substances, particularly alcohol. In order to obtain a search warrant, probable cause must exist. Thus, there must be "a 'substantial basis' for inferring a 'fair probability' that contraband or evidence of a crime will be found in a particular place." *Kazmierczak*, 461 Mich at 418. Here, the evidence was the alcohol in defendant's blood. The search warrant was obtained for the purpose of obtaining defendant's blood to test it for alcohol.

Moreover, in *Woodard*, this Court addressed whether the collection of a blood sample from a defendant's body and the analysis of that blood to determine a defendant's BAC are distinct searches. *Woodard*, 321 Mich App at 384. In *Woodard*, the defendant consented to a blood draw, and then, after her blood had been drawn, attempted to withdraw her consent and prevent the analysis of the sample. *Id*. at 380. This Court noted that, although there were no binding cases that addressed whether consent to blood alcohol testing may be withdrawn before the testing of the voluntarily provided blood sample, there is authority holding that

> once a blood sample has been lawfully obtained for purposes of analysis, the subsequent testing of that sample has " 'no independent significance for fourth amendment purposes.' " *Dodd v Jones*, 623 F3d 563, 569 (CA 8, 2010), quoting *United States v Snyder*, 852 F2d 471, 474 (CA 9, 1988). While these cases have often been decided in the context of blood seized pursuant to a warrant, they stand for the proposition that the testing of blood evidence "is an essential part of the seizure," *State v VanLaarhoven*, 248 Wis 2d 881, 891; 2001 WI App 275; 637 NW2d 411 (2001), and that "the right to seize the blood . . . encompass[es] the right to conduct a blood-alcohol test at some later time," *Snyder*, 852 F2d at 474. Thus, these cases reason that the extraction and testing of blood are "a single event for fourth amendment purposes," regardless of how promptly the subsequent test is conducted. *Id*. [*Id*. 387-388 (alterations in original).]

This Court further stated, "we find persuasive *Snyder*'s recognition that collection and testing of blood are 'a single event for fourth amendment purposes.' " *Id*. at 389, quoting *Snyder*, 852 F2d at 473-474.

This Court ultimately concluded that "once the blood was lawfully procured by the police pursuant to [the] defendant's consent, the subsequent analysis of the blood did not constitute a separate search," the defendant "had no reasonable expectation of privacy in the blood alcohol content of that sample," and the "defendant simply had no Fourth Amendment basis on which to object to the analysis of the blood *for the purpose for which it was drawn*." *Id*. at 396 (emphasis added).

Although *Woodard* concerns whether separate consent is necessary to analyze blood lawfully obtained by consent, this Court's holding that the blood draw and the analysis are not separate searches equally applies to a blood sample lawfully procured through a valid search warrant. Here, the search warrant was lawfully obtained for the purpose of analyzing the blood, and thus, the blood draw and the analyses of the blood was "a single event for fourth amendment purposes." *Id*. at 389 (citation and quotation marks omitted). Defendant was not entitled to have the evidence of his BAC suppressed on the basis that the analysis of this blood was a distinct search and outside the scope of the search warrant for the blood draw.

Affirmed.


/s/ Douglas B. Shapiro
/s/ Kathleen Jansen
/s/ Jane M. Beckering